**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 1, 2009

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                                No. 135435

HAROLD EMMETT SHAFIER III,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

We granted leave to appeal in this case to determine whether the prosecution's references to defendant's post-arrest, post-*Miranda*[1] silence violated defendant's constitutional due process rights, and, if so, whether defendant is entitled to a new trial.[2] We hold that defendant's due process rights were violated. Further, the violation amounted to plain error that affected defendant's substantial

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] The issues in this case are similar to those presented in another case we decide today: *People v Borgne*, ___ Mich ___; ___ NW2d ___ (Docket No. 134967, issued July 1, 2009). Accordingly, much of the analysis in this opinion is very similar, and at times the same, as that in *Borgne*. However, the cases were argued separately and they are distinct enough that we have not combined them in one opinion.

rights and seriously affected the fairness and integrity of the trial. We reverse defendant's conviction and remand to the trial court for further proceedings.

## I. BASIC FACTS AND PROCEEDINGS

Defendant, Harold E. Shafier III, was charged with three counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct for allegedly sexually assaulting his 13-year-old daughter, AS. Defendant and his wife adopted AS and her three sisters in 1995. In January 2005, defendant's wife reported to the police that AS was alleging that she had been sexually assaulted by defendant. Defendant was arrested immediately. During the arrest, defendant asked why he was being arrested, and the officer told him that he was under arrest for criminal sexual conduct. The officer gave him the *Miranda* warnings, and defendant remained silent thereafter.

At trial, AS testified that defendant sexually assaulted her on a daily basis from July 2004 until he was arrested. She testified that the abuse escalated over time from kissing and touching to digital penetration and oral sex.[3] She listed a few settings where the abuse occurred but initially had some difficulty describing specific incidents. AS described one instance in which one of her sisters walked in while defendant was performing oral sex on AS. The sister, age 11, testified

---

[3] AS's allegations escalated over time. Initially, AS told her mother that defendant had touched her breasts and genital area. At the preliminary examination, AS alleged that there had been incidents involving oral sex. Finally, at trial, AS alleged specific incidents that she had not previously mentioned.

and corroborated this story, although there were discrepancies between their accounts.[4] Another sister, age 17, testified that she once walked into the family's barn and found AS and defendant standing close to each other and that it appeared to her that they were about to kiss or had just been kissing.[5] AS and her sisters testified that defendant would sometimes take one or more of the girls to the store with him upon their request and buy everyone candy, but that he probably bought AS the most candy. Defendant's wife testified that she thought defendant had been favoring AS by taking her shopping and visiting her school.

Defendant testified in his own defense and adamantly maintained that he had never sexually assaulted any of his daughters. He denied the factual circumstances of the specific allegations that AS and her sisters made. He stated that it would have been physically impossible for the alleged incident of oral sex to have occurred in the manner described by AS and her sister because the table on which it was supposed to have occurred was covered with boxes at the time. Defendant also denied favoring AS. He stated that he had begun stopping at AS's school to check her progress because she was the only child not doing well in

[4] The discrepancies were in regard to when the incident occurred, the exact physical positions of AS and defendant, and the actions of each of the three people after the sister's interruption.

[5] This sister also testified that defendant had sexually assaulted her when she was younger. At the preliminary examination, she stated that defendant had touched her breasts twice, but one of the times was accidental. At trial, she alleged for the first time that defendant had regularly touched her, kissed her, and digitally penetrated her when she was between the ages of 11 and 13.

3

school.  He testified that, after school, he often took one or more of the children shopping with him and would buy candy for any of the children who requested it.

Defendant testified that he suspected that his wife encouraged their daughters to make false allegations against him because she was jealous of the time he was spending with their daughters.  It is undisputed that up to and during the period of the alleged incidents, the relationship between defendant and his wife had deteriorated.  Defendant testified that he had become increasingly angry with his wife's treatment of the children and consciously decided to become more involved in the children's lives in July 2004.  Defendant stated that his wife had reacted with jealousy and anger as he increased the time he spent with the girls.

At trial, the prosecutor referred to defendant's post-*Miranda* silence multiple times, including in his opening and closing statements, direct and redirect examinations of the arresting officer, and cross-examination of defendant. Defense counsel objected during the prosecutor's cross-examination of defendant, but the basis for the objection was unclear.

After two hours of deliberation, the jury announced that it was deadlocked. The court instructed the jury to continue to deliberate.  On the second day, after rehearing portions of the trial testimony, the jury acquitted defendant of three counts of first-degree criminal sexual conduct and convicted him of two counts of second-degree criminal sexual conduct.

Defendant appealed, and a divided Court of Appeals panel affirmed his convictions.  *People v Shafier*, 277 Mich App 137; 743 NW2d 742 (2007).  The

4

majority held that the prosecutor's use of defendant's post-*Miranda* silence in his case-in-chief violated defendant's constitutional rights, reasoning that the prosecutor's references "were not inadvertent and they were numerous" and that "the prosecutor asked the jury to infer that defendant was guilty because he did not take the affirmative step of questioning the arresting officer . . . or declaring his innocence . . . ." *Shafier*, 277 Mich App at 140, 142-143. The majority held that defendant was not entitled to a new trial, however, because defendant did not establish that the violation was plain error affecting his substantial rights. *Id.* at 143-144. The Court of Appeals dissent would have granted defendant a new trial because "[t]here is no way to know what effect those breaches had on the jurors' minds, particularly considering the jurors' initial announcement that they were deadlocked." *Id.* at 145 (Davis, J., dissenting). This Court granted defendant's application for leave to appeal.

## II. STANDARD OF REVIEW

Defendant raises an unpreserved claim of constitutional error. Constitutional questions are reviewed de novo. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008). This Court reviews the effect of an unpreserved constitutional error under the plain-error standard. *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004).

III.  ANALYSIS

A.  VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS

Defendant argues that his constitutional due process rights were violated under *Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976), and its progeny.  We hold that the prosecution's repeated references to defendant's post-arrest, post-*Miranda* silence violated defendant's due process rights under the United States Constitution.[6]

1.  Rule of *Doyle v Ohio* and its Progeny

The United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself."  US Const, Am V.[7]  *Miranda v Arizona*, 384 US 436, 444-439, 467-468; 86 S Ct 1602; 16 L Ed 2d 694 (1966), established "guidelines for law enforcement agencies and courts to follow" in order to protect the privilege against compelled self-incrimination during custodial police interrogations.  Thus, under *Miranda*, every person subject to interrogation while in police custody must be warned, among other things, that

---

[6] This Court has recognized that the Michigan Constitution's protection against the use of a defendant's post-arrest, post-*Miranda* silence is at least as extensive as that provided by the United States Constitution.  See *People v McReavy*, 436 Mich 197, 201; 462 NW2d 1 (1990).  Because defendant's due process rights were so clearly violated under the United States Constitution in this case, however, it is not necessary to evaluate the protection provided by the state constitution.

[7] The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment.  See *Malloy v Hogan*, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964).

the person may choose to remain silent in response to police questioning. *Id.* at 444-445. As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person. *Wainwright v Greenfield*, 474 US 284, 290-291; 106 S Ct 634; 88 L Ed 2d 623 (1986). Therefore, in general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution.[8] See *Wainwright*, 474 US at 290-291; *Doyle*, 426 US at 618-620.

The United States Supreme Court has explained the rationales behind the constitutional prohibition against the use of a defendant's post-arrest, post-*Miranda* silence. To begin with, a defendant's silence may merely be the defendant's invocation of the right to remain silent, as opposed to a tacit acknowledgement of guilt. "[E]very post-arrest silence is insolubly

---

[8] The United States Constitution does not prohibit impeaching a defendant with pre-arrest silence. See *Fletcher v Weir*, 455 US 603, 605-607; 102 S Ct 1309; 71 L Ed 2d 490 (1982); *Jenkins v Anderson*, 447 US 231, 239-240; 100 S Ct 2124; 65 L Ed 2d 86 (1980). Federal courts of appeals are split on whether it violates a defendant's Fifth Amendment rights under the United States Constitution for pre-*Miranda* silence to be used in the prosecution's case-in-chief. See generally *Combs v Coyle*, 205 F3d 269, 285 (CA 6, 2000) (summarizing the position of each circuit for pre-arrest, pre-*Miranda* silence). See also *United States v Frazier*, 408 F3d 1102, 1111 (CA 8, 2005) (holding that post-arrest, pre-*Miranda* silence may be used in the prosecution's case-in-chief in some circumstances); *United States v Moore*, 322 US App DC 334, 344; 104 F3d 377 (1997) (holding that post-arrest, pre-*Miranda* silence may not be used in the prosecution's case-in-chief). This Court has not addressed this issue. See *McNally*, 470 Mich at 7 n 4. These issues are not before this Court today, and this opinion has no effect on their resolution.

7

ambiguous . . . ." *Doyle*, 426 US at 617. Further, *Miranda* warnings provide an implicit promise that a defendant will not be punished for remaining silent. *Id.* at 618. Once the government has assured a person of his right to remain silent, "breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Wainwright*, 474 US at 291.

Consistent with these rationales, a defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony, see *Doyle*, or as direct evidence of defendant's guilt in the prosecutor's case-in-chief, see *Wainwright*, 474 US at 292-294.[9] "What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." *Id*. at 295. There are limited

---

[9] In *Doyle*, the Court held that the prosecution could not use a defendant's post-arrest, post-*Miranda* silence to impeach the credibility of a defendant's exculpatory testimony. *Doyle*, 426 US at 618. The prosecution attempted to use the defendants' silence to impeach the credibility of the defendants' claim, told for the first time at trial, that they had been framed. *Id.* at 611-614. The Court reasoned that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id*. at 618.

In *Wainwright*, the Court held that the prosecution could not use a defendant's post-arrest, post-*Miranda* silence to meet the prosecutor's burden of showing beyond a reasonable doubt that the defendant was not insane. *Wainwright*, 474 US at 286, 289-296. The Court explained that *Doyle*'s reasoning applied with equal force because "[t]he implicit promise, the breach, and the consequent penalty are identical in both situations." *Id.* at 292.

8

exceptions to this general rule, but none applies here.[10] This Court has adopted this understanding of a defendant's due process rights and stated that post-arrest, post-*Miranda* silence "may not be used substantively or for impeachment purposes since there is no way to know after the fact whether it was due to the exercise of constitutional rights or to guilty knowledge." *People v McReavy*, 436 Mich 197, 218; 462 NW2d 1 (1990).

In general, any reference to a defendant's post-arrest, post-*Miranda* silence is prohibited, but in some circumstances a single reference to a defendant's silence may not amount to a violation of *Doyle* if the reference is so minimal that "silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . ." *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987). See also *People v Dennis*, 464 Mich 567, 577-580; 628 NW2d 502 (2001). For example, in *Greer*, there was no *Doyle* violation where the defense counsel immediately objected to a question by the prosecution about defendant's post-arrest, post-*Miranda* silence, and the trial court twice gave a curative instruction to the jury.[11] *Greer*, 483 US at 759, 764-765.

_____

[10] For example, in *Doyle*, the Court noted that the prosecution may use evidence of a defendant's post-arrest, post-*Miranda* silence to challenge a defendant "who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Doyle*, 426 US at 619 n 11. This exception is not applicable here because defendant never claimed that he told the police an exculpatory story after he was given his *Miranda* warnings.

[11] In *Greer*, the defendant testified that he was innocent, but two other people had confessed their guilt to him. *Greer*, 483 US at 758. On cross-

9

## 2. Further Background

In this case, the prosecutor made repeated references to defendant's post-arrest, post-*Miranda* silence.  In the prosecutor's opening statement, he said that the jury would hear that after defendant was arrested, he "didn't say anything, not a word.  [The officer] told him why he was being arrested, he was arrested and no statements were made."  Next, in the presentation of the case-in-chief, the prosecutor deliberately elicited testimony from the arresting officer regarding defendant's post-arrest, post-*Miranda* silence.  The following exchange occurred regarding the circumstances of the arrest:

> *A.*  [*The Arresting Officer*] I asked [defendant] if he knew what we were here about—what we were there about and he stated he did not.  I then placed him under arrest and informed him he was under arrest for criminal sexual conduct, advised him of his *Miranda* rights which is the right to remain silent and I'm sure we've all seen that, and I placed him in the rear of my patrol vehicle.  He did not make any statements to me prior to getting to jail.
>
> *Q.*  [*The Prosecutor*] So he never made any statements to you.  He was fully aware of what you were arresting him for?
>
> *A.*  Not reference [sic] the criminal sexual conduct, correct.

On cross-examination, the defense attorney asked the arresting officer questions that clarified that the officer did not ask defendant any questions after arresting him and giving him his *Miranda* warnings.  On the prosecutor's redirect

---

examination, the prosecutor asked the defendant, "'Why didn't you tell this story to anybody when you got arrested?'"  *Id*. at 759.  Defense counsel immediately objected, and the trial court sustained the objection and twice instructed the jury to ignore the reference.  *Id.*

10

examination, the prosecutor followed up with additional questions regarding defendant's silence:

> Q. [*The Prosecutor*] [Defendant] didn't make any statements about the CSC charge, did he?
>
> A. [*The Arresting Officer*] No, he did not.
>
> Q. Never asked you about it?
>
> A. No, he did not.

After the prosecutor concluded presentation of his case, defendant testified in his own defense. Defense counsel asked why defendant was silent after he was given his *Miranda* warnings, and defendant stated that it was because he "watched a lot of TV and with something like that I didn't know what to say, I mean I was shocked . . . so I just kept my mouth shut and I was going to wait until I talked to somebody."[12] When the prosecutor cross-examined defendant, the following exchange occurred:

---

[12] The full exchange between defense counsel and defendant regarding defendant's silence was as follows:

> Q. [*The Defense Counsel*]. Were you nervous [when being arrested]?
>
> A. [*Defendant*]. Oh yes, scared shit—scared to death.
>
> Q. Did you—what—you just got silent then?
>
> A. Yeah, I didn't say anything, yeah.
>
> Q. Okay. Why did you not say anything?

11

*Q.* [*The Prosecutor*] [Y]ou didn't say a single word about being arrested for criminal sexual conduct. Is that right?

*A.* [*Defendant*] When I got to the police station—

*Q.* Yes or no. Is that right?

*A.* Yes.

Finally, the prosecutor began his closing argument by highlighting the significance of defendant's silence. The prosecutor stated:

> What we heard is that the defendant made no statements. We heard that he didn't ask Officer LaBonte any questions. Why? You're being arrested for CSC. You're being taken out of your home on a Sunday night. Why? Why? Because between June of 2004 and January of 2005 the defendant had been making his daughter do things that no person speaks about. Adults don't even talk about it between themselves.

### 3. Application of *Doyle v Ohio* and its Progeny

It is clear that the prosecution's use of defendant's silence violated defendant's due process rights under the federal constitution.

---

*A.* Just watched a lot of TV and with something like that I didn't know what to say, I mean I was shocked that he even said that [I was being arrested for CSC] so I just kept my mouth shut and I was going to wait until I talked to somebody.

*Q.* Was he [the officer] cooperative with you in talking with you or was he pretty short with you?

*A.* He just told me what I had to—what he told, what he felt I had to know and that was it, yeah.

*Q.* Okay. So, he wasn't volunteering information.

*A.* No.

The prosecutor's examination of the arresting officer established that the silence to which the prosecutor referred occurred post-arrest and post-*Miranda*. A reference to a defendant's post-arrest, post-*Miranda* silence generally constitutes a *Doyle* violation unless the reference was so minimal that "silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . ." *Greer*, 483 US at 764-765. In this case, the prosecution clearly crossed this line by repeatedly using defendant's post-arrest, post-*Miranda* silence as evidence of defendant's guilt in its case-in-chief and to impeach the defendant's testimony that he was innocent. The prosecutor impliedly asked the jury to infer guilt from defendant's silence through references to defendant's silence in his opening statement and his examination of the arresting officer. In his closing argument, the prosecutor expressly asked the jury to infer guilt from defendant's silence by explaining that the reason defendant had been silent was because "the defendant had been making his daughter do things that no person speaks about." Further, in his cross-examination of defendant, the prosecutor attempted to use defendant's silence to impeach defendant's credibility.

In sum, the state gave defendant his *Miranda* warnings, which constituted an implicit promise that his choice to remain silent would not be used against him. The state then breached that promise by attempting to use defendant's silence as evidence. Depending on the circumstances of the case, even a single reference to a defendant's post-arrest, post-*Miranda* silence, either as evidence of substantive guilt or impeachment, may violate a defendant's due process rights. Where, as in

13

this case, the prosecution makes repeated references to a defendant's silence, both as substantive evidence of guilt and for purposes of impeachment, the violation is clear. Therefore, we affirm the Court of Appeals holding that the prosecutor's repeated references to defendant's post-arrest, post-*Miranda* silence violated the due process rights guaranteed to defendant by the United States Constitution.

## B. PLAIN-ERROR REVIEW

The *Doyle* violation in this case is an unpreserved, constitutional error.[13] This Court determines whether this type of error warrants reversal under the plain-error standard of review articulated in *People v Grant*, 445 Mich 535, 547-553; 520 NW2d 123 (1994), and *People v Carines*, 460 Mich 750, 765-766; 597 NW2d 130 (1999).[14]

### 1. Plain-Error Review

There are four steps to determining whether an unpreserved claim of error warrants reversal under plain-error review. *Carines*, 460 Mich at 763. First, there

---

[13] The Court of Appeals dissent suggests that defendant may have preserved this issue. *Shafier*, 277 Mich App at 144-145 (Davis, J., dissenting). We will not address the issue of preservation, however, because the parties agreed that defendant failed to preserve an objection to any constitutional error in this case.

[14] I continue to think that this Court erred by adopting the federal plain-error doctrine, for the reasons stated in Justice Levin's *Grant* dissent, and erred further by extending the doctrine to unpreserved, constitutional error, for the reasons stated in then-Justice Kelly's *Carines* dissent. See *Grant*, 445 Mich at 554-557 (Levin, J., dissenting); *Carines*, 460 Mich at 775-783 (Kelly, J., dissenting). Nonetheless, as I have done in other cases, I recognize that *Carines* is the law in Michigan. See *McNally*, 470 Mich at 5.

must have been an error. *Id.* "Deviation from a legal rule is 'error' unless the rule has been waived." *Grant*, 445 Mich at 548 (quotation marks and citation omitted). Second, the error must be plain, meaning clear or obvious. *Carines*, 460 Mich at 763. Third, the error must have affected substantial rights. *Id.* This "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."[15] *Id.* The defendant bears the burden of establishing prejudice. *Id.* Fourth, if the first three requirements are met, reversal is only warranted if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and brackets omitted).

## 2. Application of Plain-Error Review

In this case, the four requirements of plain-error review are met, and, therefore, reversal is warranted.

---

[15] Both this Court and the United States Supreme Court have left open the possibility that there is a category of errors for which the third prong of the plain-error standard is automatically met. See *Grant*, 445 Mich at 551-552, 552 n 30 (stating that a defendant should establish prejudice in order to avoid forfeiture of an unpreserved issue "[e]xcept, of course, in the class of cases in which prejudice is presumed"); *Carines*, 460 Mich at 763 n 8. See also *Puckett v United States*, ___ US ___; 129 S Ct 1423, 1432; 173 L Ed 2d 266 (2009) (stating that "[t]his Court has several times declined to resolve whether 'structural' errors—those that affect 'the framework within which the trial proceeds,'—automatically satisfy the third prong of the plain-error test"). In any event, this issue does not arise in this case because we agree with the United States Supreme Court's determination that a *Doyle* violation is not the type of error from which prejudice would generally be presumed. See *Brecht v Abrahamson*, 507 US 619, 629; 113 S Ct 1710; 123 L Ed 2d 353 (1993).

First, there was an error. Defendant's due process rights were violated by the prosecution's references to defendant's post-arrest, post-*Miranda* silence, and defendant did not waive his rights.

Second, the error was plain. As discussed, the error was an obvious violation of a defendant's due process rights under *Doyle* and its progeny.

Third, defendant has shown that the error affected his substantial rights. Under the third prong of plain-error review, a defendant must generally show that the error was prejudicial. It is difficult for an appellate court to know what effect the prosecutor's repeated use of defendant's post-*Miranda* silence might have had on the jury. Nonetheless, we hold that defendant has shown that the error is prejudicial, considering (1) the extent of the prosecutor's comments, (2) the extent to which the prosecutor attempted to tie defendant's silence to his guilt, and (3) the overall strength of the case against defendant when considered in light of the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references to defendant's silence.[16] In contrast to the other *Doyle*

---

[16] Federal courts of appeals have considered similar factors when evaluating whether a *Doyle* violation warrants reversal under plain-error review. See, e.g., *Guam v Veloria*, 136 F3d 648, 652 (CA 9, 1998). Plain-error review, as articulated in *Carines* and *Grant*, is based on the federal courts' interpretation of the FR Crim P 52(b). See *Carines*, 460 Mich at 762-766; *Grant*, 445 Mich at 547-550, 552-553. Although Michigan courts are of course not bound by the federal courts' application of FR Crim P 52(b), and plain-error review is an inevitably case-specific and fact-intensive inquiry, we find the factors used by the federal courts of appeals useful for plain-error review in this case. While *Veloria* was a "plain error" case, the factors used there to evaluate the effect of a *Doyle* error on a trial are traceable to *United States v Newman*, 943 F2d 1155 (CA 9, 1991),

16

case we decide today, *People v Borgne*, ___ Mich ___; ___ NW2d ___ (Docket No. 134967, issued July 1, 2009), in which we consider these same factors, the error in this case was clearly prejudicial.

To begin with, the more extensive a prosecutor's references to a defendant's post-arrest, post-*Miranda* silence, the more likely it is that the references had a prejudicial effect. In this case, the prosecutor's references to defendant's silence were frequent throughout the trial, from the prosecutor's opening and closing statements, to his case-in-chief, to his cross-examination of defendant. The pervasiveness of the prosecutor's references to defendant's silence increases the likelihood that the references had a prejudicial effect.

Further, a prosecutor's references to a defendant's post-arrest, post-*Miranda* silence are more likely to be prejudicial the more directly or explicitly the prosecutor uses the silence to challenge a defendant's credibility or show a defendant's guilt. In this case, the references to defendant's post-arrest silence were not inadvertent references that the jury might not have connected to defendant's guilt. Instead, the prosecutor referred to defendant's silence in a manner that deliberately challenged defendant's credibility and his claim of innocence. In addition, the prosecutor impliedly suggested that defendant's

which applied the "harmless beyond a reasonable doubt" standard from *Chapman v California*, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). In footnote 9 of *Carines*, this Court distinguished "plain error" review from "harmless error" review. *Carines*, 460 Mich at 764 n 9. We do not intend to nullify that distinction by our use of the *Veloria* test.

17

silence was evidence of his guilt and even explicitly asked the jury to infer guilt from defendant's silence in his closing argument. In comparison, in *Borgne*, the prosecutor did use the defendant's silence to challenge the credibility of defendant's exculpatory story, but he did not go so far as to explicitly or impliedly suggest to the jury that it should infer guilt from the silence.[17]

Finally, the degree to which prosecutorial references to a defendant's post-arrest, post-*Miranda* silence are prejudicial depends on the overall strength of the case against the defendant and the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references to a defendant's silence. In this case, the strength of the prosecutor's overall case against defendant hinged entirely on the jury's assessments of the witnesses' credibility. It consisted mainly of AS's testimony and the corroborating testimony of her sisters, but the sisters' testimony conflicted at times with AS's. The jury's acquittal of defendant on the charges of first-degree criminal sexual conduct suggests that at least some of the jurors questioned AS's credibility as compared to defendant's, even with the prosecutor's impermissible references to defendant's silence. The trial was essentially a credibility contest between defendant and AS and her sisters, and the prosecutor's repeated references to defendant's silence

---

[17] This comparison is not intended to suggest that a defendant's silence must be used in the prosecutor's case-in-chief in order to be prejudicial; it is certainly conceivable that the use of a defendant's silence only for impeachment purposes could be prejudicial, depending on a case's circumstances. See, e.g., *Veloria*, 136 F3d at 652-653.

might have undermined defendant's credibility. In contrast, in *Borgne*, the degree to which the jury would have found much of the evidence credible was not directly affected by the prosecutor's references to the defendant's silence. Specifically, the prosecution in *Borgne* presented physical evidence against the defendant and eyewitness testimony corroborating the victim's account of the events.

In sum, in this case, in light of the prosecutor's extensive references to defendant's silence, the extensive connection of that silence to defendant's guilt, the inconsistencies in the prosecutor's case and the other evidence presented against him, and the nature of defendant's defense—which hinged on his own credibility, we hold that the error was prejudicial.[18]

Fourth, there is no question that this is the sort of error that compromises the fairness, integrity, and truth-seeking function of a jury trial. The violation of defendant's due process rights rendered the trial fundamentally unfair and cast a shadow on the integrity of our state's judicial processes. Therefore, all four requirements of plain-error review are met, and reversal is warranted.

## IV. CONCLUSION

The prosecutor's references to defendant's post-arrest, post-*Miranda* silence violated defendant's due process rights under the federal constitution. The

---

[18] We note that, under the circumstances of this case, defense counsel's attempts during trial to lessen the impact of the *Doyle* errors by asking defendant why he did not make statements before trial, did not waive the error, cure it, or render it harmless.

19

violation amounts to plain error that affected defendant's substantial rights, and it compromised the fairness, integrity, and public reputation of the judicial proceedings. Therefore, we reverse defendant's conviction and remand to the trial court for further proceedings.

> Michael F. Cavanagh
> Marilyn Kelly
> Elizabeth A. Weaver
> Maura D. Corrigan
> Stephen J. Markman
> Diane M. Hathaway

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                                      No. 135435

HAROLD EMMETT SHAFIER III,

      Defendant-Appellant.

_____

KELLY, C.J. (*concurring*).

I concur with the majority opinion.  However, I continue to believe that this Court should not have extended the plain-error doctrine to the kind of unpreserved constitutional error present in this case.  As I stated in my dissent in *People v Carines*, I believe that, when there is unpreserved constitutional error, a defendant's conviction should be affirmed only "'if the reviewing court is satisfied that the error is harmless beyond a reasonable doubt.'"[1]

It appears that, under the *Carines* plain error standard, there is never error requiring reversal when there is a "wealth of incriminating evidence."[2]  Under

_____

[1] *People v Carines*, 460 Mich 750, 778; 597 NW2d 130 (1999) (Kelly, J., dissenting), quoting *People v Graves*, 458 Mich 756, 482; 581 NW2d 229 (1998).

[2] *People v Borgne*, ___ Mich ___, ___ NW2d ___, issued June 24, 2009 (Docket No. 134967) slip op at 26.

those circumstances, the judicial system essentially exempts criminal defendants from the constitutional right to due process of law.

In the interest of preserving the integrity of the judicial system, we should re-elevate due process to its proper place. The present blatant and repeated abrogation of people's constitutional rights threatens the foundation of the court system.

I recognize that *Carines* remains the law in Michigan and cannot be ignored, but I believe the Court should reexamine it at the earliest possible moment.

Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                       No. 135435

HAROLD EMMETT SHAFIER III,

      Defendant-Appellee.

_____

YOUNG, J. (*concurring*).

I concur in the result and analysis of the majority opinion. I write separately because I will not join footnote 14, in which Justice Cavanagh "dissents" from the *Carines*[1] plain-error analysis in his own opinion. Justice Cavanagh is entitled to such views, but his opposition to this Court's precedent and preservation of his view is better placed in a concurring statement.

                                    Robert P. Young, Jr.

---

[1] *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).