# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELVIN MONROE BATES,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319671
Ingham Circuit Court
LC No. 12-000949-FC

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions following a jury trial of first-degree murder, MCL 750.316, assault with intent to commit murder, MCL 750.83, carrying a concealed weapon (CCW) (3 counts), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment for his first-degree murder conviction, 180 to 600 months' imprisonment for the assault with intent to commit murder conviction, 12 to 60 months' imprisonment for each CCW conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from a fatal shooting that occurred on August 31, 2002. The events leading to the shooting began with a dispute several days earlier between defendant and the victim's long-time friend, Anthony Dorris. The dispute between defendant and Dorris was ongoing, and there was testimony that defendant had displayed a gun and made threatening comments toward Dorris and others. On the day of the shooting, Dorris testified that defendant walked by him and lifted his shirt to display his gun. Dorris walked toward defendant to talk to him, and the victim walked up to them at the same time. According to Dorris, the victim "asked what was going on" and defendant told him, "you ain't got nothing to do with it." Defendant then pulled out his gun and shot the victim in the neck. The victim fell, and defendant shot the victim again. After the second shot, Dorris took off running and defendant shot him in his foot. Dorris was able to retreat to a place of safety. When Dorris looked back, he saw defendant shooting the victim multiple times while the victim was face-up and not moving. Dorris's testimony was corroborated by multiple eyewitnesses to the shooting. Defendant testified in his own defense at trial, and claimed that he acted in self-defense. After trial completed, a jury convicted defendant, and he now appeals.

-1-

Defendant argues that the prosecutor's misconduct denied him a fair trial. While we agree that prosecutor misconduct occurred, we do not agree that the errors necessitate reversal.

Because defendant did not object to the prosecutor's conduct below or request a curative jury instruction, his claims of misconduct are not preserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). In order to show plain error, a defendant must establish "(1) that the error occurred, (2) that the error was plain, (3) that the error effected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 480 (internal quotation marks and citation omitted). In addition, reversal is not required "where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476.

Defendant first asserts that the prosecutor's repeated references at trial to his silence regarding the shooting violated his constitutional due process rights under *Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976). Defendant asks us to consider questions asked by the prosecutor during cross-examination of defendant and one reference made during closing argument. In response, the prosecution asserts that at least some of the prosecutor's questions at trial regarding defendant's silence were proper because they involved defendant's pre-arrest silence. However, the prosecution concedes that all references to defendant's post-arrest, post-*Miranda*[1] silence were in error, but argues that reversal is not warranted under the framework established by our Supreme Court in *People v Borgne*, 483 Mich 178; 768 NW2d 290 (2009) and *People v Shafier*, 483 Mich 205; 768 NW2d 305 (2009).

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966) "established guidelines for law enforcement agencies and courts to follow in order to protect the privilege against compelled self-incrimination during custodial police interrogations." *Shafier*, 483 Mich at 212 (internal quotation marks omitted). "As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person." *Id.* at 212. Moreover, a defendant's silence may not be used to impeach a defendant's exculpatory testimony. *Borgne*, 483 Mich at 187. Thus, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate the defendant's right to remain silent and due process rights. *Shafier*, 483 Mich at 212-213, citing *Doyle*, 426 US at 618-620. However, "[a] defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda* warnings have been given." *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005). Further, "[a] prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true." *Id.* at 634-635 (citation omitted).

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Here, the prosecutor referred to defendant's silence both during his cross-examination of defendant and during closing argument. Initially, the prosecutor only questioned defendant about what occurred after defendant was arrested and before he invoked his right to counsel. References to defendant's pre-arrest silence under circumstances when reporting a crime would have been natural for defendant were proper. *Id*. However, the prosecutor continued his line of questioning during cross-examination, further inquiring into defendant's silence with questions that were clearly about defendant's post-arrest, post-*Miranda* silence. Moreover, like in *Borgne*, it is "clear that the prosecutor was emphasizing the negative implications of defendant's post-arrest, post-*Miranda* silence." *Borgne*, 483 Mich at 191. Accordingly, as the prosecution concedes, the prosecutor erred. Further, during closing argument, the prosecutor argued in part as follows:

> He then tells you, ladies and gentlemen, that he's afraid, that he's not going to talk to the police. But we know that only a year and a half earlier he had a conversation with Detective St. Aubin. He was cooperative then, and now he has an interest. He is involved in this shooting. He did this shooting. He killed a man and shot another man. So now, now he won't talk.

Again, the prosecutor's reference to defendant's post-arrest, post-*Miranda* silence during closing argument was also improper.

However, defendant cannot show that the errors affected his substantial rights. *Gibbs*, 299 Mich App at 482. In *Shafier*, our Supreme Court explained:

> Under the third prong of plain-error review, a defendant must generally show that the error was prejudicial. It is difficult for an appellate court to know what effect the prosecutor's repeated use of defendant's post-*Miranda* silence might have had on the jury. Nonetheless, we hold that defendant has shown that the error is prejudicial, considering (1) the extent of the prosecutor's comments, (2) the extent to which the prosecutor attempted to tie defendant's silence to his guilt, and (3) the overall strength of the case against defendant when considered in light of the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references to defendant's silence. [*Shafier*, 483 Mich at 220-221.]

In regard to the first factor, "the more extensive a prosecutor's references to a defendant's post-arrest, post-*Miranda* silence, the more likely it is that the references had a prejudicial effect." *Id*. at 221-222. Applied to the current case, we conclude that the prosecutor's references to defendant's silence were not extensive, especially when considered in the context of the entire trial. The prosecutor's questioning of defendant regarding his post-arrest silence was brief, particularly in comparison to the prosecutor's lengthy cross-examination. Further, the reference in closing argument was likewise brief and relatively ambiguous.

With respect to the second factor, as the *Shafier* Court explained, references "to a defendant's post-arrest, post-*Miranda* silence are more likely to be prejudicial the more directly or explicitly the prosecutor uses the silence to challenge a defendant's credibility or show a defendant's guilt." *Id*. at 222. Here, the prosecutor used defendant's silence to argue that

-3-

defendant's exculpatory story should not be believed, and the references did not seem inadvertent.

Finally, in regard to the third factor, we consider "the overall strength of the case against the defendant and the degree to which the jury's assessment of the evidence might have been affected by the prosecutor's references to a defendant's silence." *Id*. at 222-223. During its case in chief, the prosecutor presented compelling evidence, independent of his brief references to defendant's post-arrest, post-*Miranda* silence, to support the conviction. Multiple witnesses testified that in the days leading up to the shooting, defendant threatened Dorris by repeatedly displaying a gun and making threats against Dorris and his family. Further, several witnesses to the shooting identified defendant as the shooter. The witnesses testified that defendant was in an argument with Dorris and the victim, that he lifted his gun to the victim's neck, and that he then pulled the trigger. Multiple witnesses testified that after defendant shot the victim in the neck and the victim fell to the ground—a fact that was corroborated by the medical examiner's testimony that the victim would have fallen immediately after being shot in the neck. Those same witnesses testified that after the victim fell, defendant proceeded to shoot him again—multiple times—while he was lying face-up and motionless on the ground. Defendant fled the scene immediately after the shooting. Then, instead of reporting the incident to the police and asserting self-defense, he hid for three or four days in a motel in another county. "Evidence of flight may be used to show consciousness of guilt." *McGhee*, 268 Mich App at 613. Accordingly, we conclude that the prosecutor's non-extensive references to defendant's post-arrest, post-*Miranda* silence, although improper, were not outcome determinative. Further, reversal is not warranted because "a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476.

Defendant next asserts that he was denied a fair trial because the prosecutor improperly asked him to comment on the credibility of witnesses during the trial. "It is not proper for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001) (citations and quotation marks omitted). However, "[i]t is not improper for the prosecutor to attempt to ascertain which facts are in dispute." *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

Here, during cross-examination, the prosecutor asked defendant whether the testimony of some of the prosecution witnesses "fit" defendant's story:

> *Q*. To say that [the victim] was probably leaning that far in, that fits your story, doesn't it?
>
> *A*. Yes, sir.
>
> *Q*. It's the opposite of people saying you put the gun to his neck, right?
>
> *A*. Yes, sir.
>
> *Q*. Because that doesn't help you?

-4-

*A*. That's not what happened.

*Q*. I am just saying, the fact that people say that you shot him in the neck by putting the gun up to his neck, that doesn't help your story?

*A*. That's not what happened.

The prosecutor's references to defendant's testimony being the opposite of what "people" were saying were designed to determine what facts were in dispute and were, therefore, not improper. *Id*. But, as the prosecution concedes, the prosecutor erred in asking defendant to comment on the credibility of one of the witnesses to the shooting. The prosecutor asked defendant whether the witness was "telling the truth when she testified" and whether she was a "liar" and was "lying about what she said." These questions were improper. *Knapp*, 244 Mich App at 384. However, pursuant to the above discussion, defendant cannot show that the error affected his substantial rights in light of the overwhelming evidence of guilt presented. *Gibbs*, 299 Mich App at 482.

Affirmed.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola