# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 20, 2018

Plaintiff-Appellee,

v

No. 335374
Genesee Circuit Court
LC No. 16-039127-FH

HARRY DOUGLAS NELSON,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Defendant, Harry Nelson, appeals as of right his jury trial convictions of second-degree criminal sexual conduct (CSC-II) (person under 13 years of age), MCL 750.520c, and accosting a child for immoral purposes, MCL 750.145a. Nelson was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for CSC-II, and 48 to 180 months' imprisonment for accosting a child for immoral purposes. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

On February 28, 2016, Nelson visited his daughter's home. At one point, Nelson's daughter left the home to pick up food. Nelson's granddaughter, the victim, testified that after her mother left, Nelson walked into the living room, removed his glasses and teeth, knelt down on the floor by her, and pushed her legs apart with his hands. She stated that Nelson held her hands down so she could not move and then started kissing over her vaginal area with his tongue. She was wearing sweatpants at the time, and forensic testing confirmed that Nelson's saliva was located on the crotch area of her pants. The victim stated that Nelson told her he would stop if she kissed him, but she refused. She testified that when she stood up from the couch, Nelson slapped her buttocks with his hand. She went upstairs, locked herself in her bedroom, and called her mother to tell her what happened.

When the victim's mother learned what happened, she was shaking too much to drive so a couple of friends drove her home. She entered the home while on the phone with 911. She also had a handgun on her hip. While the victim recounted what had occurred, her mother and Nelson got into an argument. The testimony reflects that Nelson repeatedly apologized and asked the victim's mother not to be upset. The argument, however, became physical and the victim's mother pointed her gun at Nelson to stop him from talking. The 911 operator instructed

-1-

the victim's mother to place her firearm in a safe, and while she was putting the gun away, Nelson left the house and ran to a nearby fire station. The victim's mother pursued Nelson to the fire station and a physical altercation continued.

When the responding police officer arrived, Nelson was sitting on the ground and the victim's mother was yelling at him. Nelson was placed in the back of a police car. The responding officer testified that he did not observe any bruising or bleeding on Nelson, and he stated that he found Nelson to be coherent.

Around 2:00 a.m., Nelson was interviewed at the police station. Before giving a statement, a police officer read him his *Miranda* [1]rights while he read along on a separate piece of paper. Thereafter, he acknowledged each of the rights contained on the *Miranda* waiver form and signed the form. He then gave statements to the police, including that he tickled the victim's inner thighs, that the victim put him in a headlock with her legs, and that he may have felt a sexual urge for a brief moment. Nelson also admitted that he pulled the victim's legs apart and put his mouth toward her vagina, although he maintained that he never wanted to actually touch her vagina. Nelson also stated that he intended to smack the back of the victim's legs as she stood, but that he possibly hit her buttocks. At the end of the interview, the police officer drafted a written statement for Nelson to sign. Nelson corrected one statement, changing the statement that he put his mouth "on" the victim's vagina to a statement that he put his mouth "near" the victim's vagina. He then signed the statement as the true and correct account of the events.

## II. INVOLUNTARY CONFESSION

### A. STANDARD OF REVIEW

Nelson first argues that his statement to the police should have been suppressed because it was not voluntary. This issue was not raised below, so it is unpreserved. We review an unpreserved constitutional error under the plain error standard. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). Under the plain error standard, the defendant must satisfy three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third prong requires the defendant to establish that the error affected the outcome of the lower court proceedings. *People v Borgne*, 483 Mich 178, 196; 768 NW2d 290 (2009). Even if all three requirements are met, reversal is only warranted when the plain, forfeited error resulted in an innocent defendant's conviction, or it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Carines*, 460 Mich at 763 (quotation marks and citation omitted).

---

[1] *Miranda v Arizona*, 384 US 436; 86 S C t 1602; 16 L Ed 2d 694 (1966).

## B. ANALYSIS

A statement is voluntary if the totality of all the surrounding circumstances shows that it is the product of an essentially free and unconstrained choice and not the result of an overborne will. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. at 334.]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness," *id*., and no single factor is determinative, *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005). The ultimate test of admissibility is whether the totality of the circumstances indicates that the statement was freely and voluntarily made. *Cipriano*, 431 Mich at 334. The legal analysis on whether a statement is voluntary, is "essentially the same with respect to examining the 'voluntary' prong of a *Miranda* waiver." *People v Ryan*, 295 Mich App 388, 397; 819 NW2d 55 (2012).[2]

Nelson contends that his statement was involuntary because he was 65 years old, only had a ninth grade education, and had heart problems. He further asserts that during the interview he complained of fatigue and an ailing heart, and he mumbled at the end of the interview. Finally, he finds it significant that that his daughter, the victim's mother, pointed a gun at his head just prior to the interview. However, on the record before this Court, those facts are insufficient to establish plain error. See *Carines*, 460 Mich at 763.

Nelson was sentenced as a fourth-offense habitual offender, which indicates that he has experience with legal proceedings. Further, at the beginning of the interview, he stated he knew what *Miranda* rights are, but had not yet been advised of his rights. Nelson then read to himself his *Miranda* rights while a police officer read them aloud. When asked about each individual *Miranda* right, he verbally responded that he understood the rights and then signed a *Miranda* form indicating the same. Thereafter, throughout the interview, he never expressed unwillingness to talk to the police or a desire to end the interview. Further, the interview took place shortly after the alleged assault and only lasted for about an hour and 18 minutes. Nelson

---

[2] Nelson does not challenge the voluntariness of his *Miranda* waiver. As such, despite the prosecution's invitation to do so, we will not address this issue further.

was coherent when he answered the police officer's questions about his age, date of birth, highest level of education, and his ability to read and write. Nelson clearly stated that he was not under the influence of drugs or alcohol, and that he could understand the police officer. Although Nelson told the officer that he had lung and heart problems, Nelson also said that his health issues did not affect his mental capabilities. The police officer found Nelson coherent and not under the influence of drugs or alcohol. Further, the officer did not believe that Nelson required medical attention as he did not appear to be bruised or bleeding. Nelson never requested medical attention, nor is there any evidence on the record suggesting that medical attention was, in fact, required. Viewed in context, there was no indication that Nelson's statements that his "heart hurts" was indicative of physical heart pain. And the record reflects that after the interview, the police officer drafted a written statement which he then went over with Nelson. Nelson made one significant change to the statement and then signed it as a true and accurate account of what had happened. There is no evidence on the record that Nelson was deprived of food, sleep, or medical attention. Further, there is no indication that the police threatened him with physical abuse or actually physically abused him. Thus, based on the totality of the circumstances, Nelson's statement appears to be the product of a free and unconstrained choice. As such, Nelson cannot establish plain error warranting reversal on this basis.

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Nelson's trial lawyer did not move to suppress Nelson's statements to the police, nor did he object to the admission of the police interview at trial. Nelson argues that his lawyer provided ineffective assistance by failing to move to suppress it. In the absence of a *Ginther*[3] hearing, "our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

In order to establish error warranting relief, Nelson must show that his lawyer's decision fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the unprofessional error, the outcome of his trial would have been different. *People v Gioglio (On Remand)*, 296 Mich App 12, 21-22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. A defendant's lawyer is presumed to be effective, and the defendant bears a heavy burden to demonstrate otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). Here, Nelson argues his lawyer was ineffective for failing to move to suppress his confession on the grounds that it was involuntary. However, given that there is no evidence that the statement was, in fact, involuntary under the totality of the circumstances, Nelson cannot establish this his lawyer's performance was

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

deficient. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that a defense lawyer is not required to advocate a meritless position).

Moreover, assuming *arguendo* that if Nelson's lawyer had moved and succeeded in suppressing Nelson's statement to the police, Nelson still cannot establish the prejudice prong to his ineffective assistance claim. The victim testified unequivocally that Nelson kissed her vaginal area over her clothes. There was forensic evidence corroborating that Nelson's saliva was on the crotch area of her pants. The victim immediately reported the incident and was crying and upset by it. There was testimony that Nelson apologized for what happened and urged the victim's mother not to be upset by it. Thus, even in the absence of his statements, there was overwhelming evidence on the entire record in support of his convictions. Nelson was not denied the effective assistance of a lawyer.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Patrick M. Meter