*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff- Appellee,

v

SANTIAGO ESQUIVEL,

        Defendant-Appellant.

UNPUBLISHED
December 12, 2019

No. 344832
Calhoun Circuit Court
LC No. 2017-001897-FC

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

This case arises from defendant's repeated sexual assaults of a minor child. Defendant appeals his convictions and sentences, arguing that he was entitled to a mistrial because a police detective violated his due-process rights by referring to his postarrest, post-*Miranda* silence. In addition, defendant argues that the trial court erroneously scored offense variables 7 and 10. Because defendant's arguments are without merit, we affirm his convictions and sentences.

## I. BACKGROUND

This case arises from defendant's repeated sexual assaults of his girlfriend's minor child. Defendant helped raised the victim from the time she was four years old. He began sexually abusing her when she was 10 or 11 years old, and the abuse continued until the victim was 15 years old. The assaults escalated from defendant penetrating the victim with his fingers while she was asleep to defendant attempting to penetrate the victim with his penis, kissing her, touching her breasts and thighs, forcing her to watch pornography, forcing her to touch his penis, and following her around the house to abuse her in various locations. Defendant abused the victim in the kitchen, bathroom, living room, and bedrooms. Defendant sometimes accosted the victim several times a day. Defendant also manipulated and controlled the victim, making her feel that the abuse was her fault, and treating her differently than her siblings by buying her gifts, paying her special attention, not allowing her to leave the house, and acting like they were in a romantic relationship.

During the trial, the victim's mother testified that she texted defendant and asked him if he had touched her daughter. She testified that defendant did not deny touching her daughter,

but responded by texting "WTF?" and "What do you want me to say?"  She further testified that defendant's failure to deny the accusation made her think "that he did it."

During the prosecutor's case-in-chief, a police detective testified on direct examination that he set up an interview with the victim after speaking with her mother to coordinate a date and time.  After he interviewed the victim, the detective had contact with defendant, and then he obtained a search warrant for defendant's cell phone.  Therefore, during the testimony elicited by the prosecutor, the detective made no mention of any attempt to interview defendant and made no reference to defendant invoking his right to counsel or to remain silent.

A juror then submitted a question inquiring about the grounds on which police arrested defendant.  In response to the juror's inquiry, the trial court questioned the detective about the victim's interview.  The detective responded that, after he interviewed the victim, he believed he had probable cause to arrest defendant.  The detective further responded that the prosecutor instructed him to arrest and interview defendant.  Therefore, during the testimony elicited by the trial court, the detective stated that he received instructions to arrest and interview defendant, but he made no mention of an attempt to interview defendant or defendant invoking his right to counsel or to remain silent.

Based on the detective's response to the trial court's questions, defendant moved for a mistrial, arguing that the detective's testimony violated his due-process rights by referring to his postarrest, post-*Miranda* silence.  Defendant asserted that the detective revealed that the police *intended* to interview defendant.  Coupled with the fact that no interview was presented to the jury, defendant argued that the detective's testimony created an implication that defendant either asserted his right to counsel or his right to remain silent.  The trial court denied the motion for a mistrial, holding that the witness did not mention that defendant had invoked his right to counsel or to remain silent.  The trial court concluded that there was nothing improper about the detective's testimony, and even if any error had occurred, it was harmless.

A jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1); and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b).

At sentencing, the trial court assigned 50 points to offense variable (OV) 7 for sadism, and assigned 15 points to OV 10 for predatory conduct against a vulnerable victim.  The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to concurrent terms of 356 months to 712 months in prison for each CSC-I conviction; 83 months to 15 years in prison for the assault conviction; and to 125 to 270 months in prison for the CSC-II conviction.  Defendant now appeals as of right.

## II.  ANALYSIS

### A.  MOTION FOR A MISTRIAL

Defendant argues that the trial court improperly denied his motion for a mistrial and that this Court should reverse his convictions and remand for a new trial.  Specifically, defendant

argues that the detective improperly referred to his postarrest, post-*Miranda* silence by testifying that he was instructed to interview defendant. Defendant further argues that this testimony gave rise to the implication that he either asserted his right to counsel or his right to remain silent, and that presenting the jury with this implication violated his due-process rights, entitling him to a mistrial. Because the trial court did not err in concluding that the detective's testimony did not reference defendant's postarrest, post-*Miranda* silence, the trial court did not abuse its discretion in denying defendant's mistrial.

This Court reviews a trial court's decision on a motion for mistrial for an abuse of discretion. *People v Ortiz-Kehoe*, 237 Mich App 508, 512; 603 NW2d 802 (1999). A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). "Nevertheless, an unresponsive, volunteered answer to a proper question is not a ground for the granting of a mistrial." *Id*.

In *People v Shafier*, 483 Mich 205, 224; 768 NW2d 305 (2009), our Supreme Court held that the prosecutor violated the defendant's due-process rights when he referred to the defendant's postarrest, post-*Miranda* silence. In that case, however, the prosecutor made repeated references to the defendant's silence in his opening statement; in the presentation of the case-in-chief by eliciting testimony from the arresting officer; on cross-examination of the defendant; and in closing argument. The Supreme Court stated that the issue was that the state gave defendant *Miranda* warnings, "which constituted an implicit promise that his choice to remain silent would not be used against him," and then "breached that promise by attempting to use defendant's silence as evidence" against him. *Id*. at 218. The Court concluded that there was "no question that this is the sort of error that compromises the fairness, integrity, and truth-seeking function of a jury trial," rendering the trial fundamentally unfair. *Id*. at 224.

In this case, unlike in *Shafier*, the allegedly improper comment by the police detective was not grounds for a mistrial. The prosecutor did not refer to defendant's postarrest, post-*Miranda* silence in his opening statement, in his case-in-chief, during cross-examination of any witness, or in his closing statement. In fact, the comment to which defendant objects was not elicited by the prosecutor's questioning at all. The trial court asked the detective, after a juror raised the question, about his interview of the victim. The detective responded that he believed he had probable cause to arrest defendant following the interview of the victim and that the prosecutor instructed him to arrest and interview defendant. No follow-up questions were asked, no further references were made to an interview, and no references were made to defendant's silence or lack thereof. In fact, the challenged testimony did not refer to defendant's silence at all. Furthermore, the testimony was not repeated; it was an isolated and inadvertent comment in response to a juror's question.

On these facts, the trial court properly denied defendant's motion for a mistrial. The single reference to the detective's instructions to arrest and interview defendant did not amount to a reference to defendant's silence. Even if it had, it did not amount to a due-process violation because the reference was "so minimal that the silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." *Id*. (cleaned up). The trial court did not abuse its discretion when it denied defendant's motion for a mistrial and defendant was not denied a fair trial.

## B. OFFENSE VARIABLE 7

Defendant next argues that the trial court improperly assigned 50 points to OV 7. When a defendant has preserved an objection to the trial court's scoring of the sentencing guidelines, we review the trial court's findings of fact for clear error, and those findings must be supported by a preponderance of the evidence. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). We review de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute. *Id*. On the facts of this case, the trial court appropriately assigned 50 points to OV 7.

A trial court must assess 50 points for OV 7 if "a victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). The term "sadism" is defined to mean "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." Before it may assess 50 points for OV 7, a trial court must determine "whether the defendant engaged in conduct beyond the minimum required to commit the offense." See *People v Hardy*, 494 Mich 430, 443-444; 835 NW2d 340 (2013).

The jury convicted defendant of CSC-I, assault with intent to commit criminal sexual conduct involving sexual penetration, and CSC-II. The essential and applicable elements of CSC-I are a person engaging in sexual penetration of another person under the age of 13 years or when the victim is at least 13 but less than 16 years of age and the actor is a member of the same household as the victim, or the actor is in a position of authority over the victim and uses that authority to coerce the victim to submit. MCL 750.520b. Assault with intent to commit criminal sexual conduct involving sexual penetration requires an assault with the intention to commit criminal sexual conduct involving sexual penetration. MCL 750.520g(1). As related to this case, CSC-II requires engagement in sexual contact with a victim between the ages of 13 and 16 while the offender is in a position of authority. MCL 750.520c(1)(b).

At sentencing, the prosecutor argued that the trial court should assess 50 points for OV 7 because defendant sexually assaulted the victim over a prolonged period of time, beginning at an early age. The prosecutor also argued that defendant's repeated insertion of his fingers into the victim's vagina constituted degradation and humiliation of the victim. The trial court assessed 50 points for OV 7, stating that defendant had abused the victim for years; defendant committed acts of abuse in all parts of the home, including places where the victim deserved privacy; and defendant followed the victim into the bathroom and other areas of the home, "constantly" assaulting her, "oftentimes more than once a day." Further, the trial court noted that the victim felt that defendant treated her differently than her siblings, which "affected her to the point where she contemplated suicide." The trial court pointed out that defendant would pull up the victim's clothing in the kitchen, while she was trying to do chores, and followed her into all areas of the home "on a near daily basis for so many years." Based on this, the trial court concluded that defendant's behavior rose to the level of "excessive sadism in the form of humiliation of the victim."

Based on our review of the record, the trial court did not err in concluding that defendant went beyond the minimum conduct required to commit the offenses. Defendant followed the

victim around the home and abused her in every area of the house, both while she was asleep and awake; manipulated and controlled her by governing her whereabouts and made her feel the abuse was her fault; forced her to watch pornography; and treated her differently than her siblings. This went well beyond the minimum needed to commit the offenses and cumulatively qualified as sadistic behavior. See *Hardy*, 494 Mich at 443-444; MCL 777.37(3). The trial court did not err in assigning 50 points to OV 7.

## C. OFFENSE VARIABLE 10

Defendant lastly argues that the trial court improperly assigned 15 points, rather than 10 points, to OV 10. Because defendant did not object at sentencing to the trial court's scoring of OV 10, we review this unpreserved claim of sentencing error for plain error affecting substantial rights. *People v Kimble*, 252 Mich App 269, 275-276; 651 NW2d 798 (2002).

Offense variable 10 involves the exploitation of a vulnerable victim. MCL 777.40. The statute directs the trial court to score OV 10 as follows:

> (1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) Predatory conduct was involved.............................................15 points
>
> (b) The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ....................................................................................10 points

Defendant concedes that assigning 10 points to OV 10 would be appropriate because defendant exploited the victim, but the parties disagree regarding whether defendant's actions involved "predatory conduct" meriting the higher score of 15 points. "Predatory conduct" is preoffense conduct directed at a victim for the primary purpose of victimization. MCL 777.40(3)(a); *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). "Predatory conduct" must be more than purely opportunistic in nature. *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). The timing and location of an offense can be evidence of predatory conduct. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003). A victim's youth can render her susceptible to physical restraint or temptation, and thus, predation, by an adult. *People v Johnson*, 298 Mich App 128, 133; 826 NW2d 170 (2012).

The record reflects that defendant's preoffense conduct was predatory in nature. There is no dispute that the victim was a child. Her testimony reflected that defendant sexually abused her from the age of 10 or 11 until she was 15 years old. The record supported that she was vulnerable to the temptation of defendant's gifts, special attention, control of her whereabouts, threats not to tell anyone about the abuse, and defendant telling her that it was "her and him forever." The youthful victim was susceptible to physical restraint by defendant, who lived in the same home as her and would enter rooms in which the victim would expect privacy, such as the bathroom and her bedroom. Furthermore, defendant assaulted the victim in every room of the home, especially when the victim's mother was not present, evidence that he was "lying in wait" to victimize the child.

The record supports the trial court's finding that defendant's gifts to the victim, special attention, threats, control and other conduct qualified as predatory conduct used to exploit a vulnerable victim. Defendant's actions were more than "run-of-the-mill planning" to effect a crime without detection. See *Huston*, 489 Mich at 462. Defendant forced the victim to watch pornography on his cell phone, took her out to eat and gave her special treatment, did not allow her to spend the night at friends' houses, told her mother things to get her grounded to keep her home and abuse her, watched the victim, waited until they could be alone together or the victim was sleeping, and accosted her all throughout her home. Because his actions fit the statutory definition of predatory conduct, the trial court's assessment of 15 points for OV 10 was proper.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ James Robert Redford

-6-