# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DANIEL JAY WEAVER,

       Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 329900
Newaygo Circuit Court
LC No. 15-011046-FH

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of operating a motor vehicle without a valid license, second or subsequent offense, MCL 257.904(3)(b), third-degree fleeing and eluding, MCL 257.602a(3), and resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to one year incarceration for his motor vehicle conviction, to 46 months to 40 years' imprisonment for the fleeing and eluding conviction, and to 46 months to 15 years in prison for the resisting and obstructing conviction. The trial court ordered defendant to serve these sentences concurrently, but, because he committed the offenses while out on bond pending charges in a drunk driving case, the court ordered him to serve his sentences in this case consecutive to his sentences in the drunk driving case. We affirm.

In January 2015, defendant was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, third offense, and operating a motor vehicle while his license was suspended, revoked, or denied, second or subsequent offense. The trial court released defendant on bond while he awaited trial on the charges. In March 2015, defendant was operating a pickup truck with tinted windows when a state trooper attempted to pull him over. Defendant did not slow down and a pursuit took place, with defendant eventually driving into a wooded area. The pickup truck became stuck, and the trooper, who had parked his cruiser outside of the wooded area, ran up to the truck. The trooper smashed his flashlight against a window in the truck, creating holes sufficient for the trooper to see the driver. Defendant then hit the accelerator, pulled out of the mire, and was able to escape in the truck. Defendant, however, was subsequently apprehended, and the trooper identified defendant as the operator of the pickup truck that the trooper had pursued.

-1-

On June 9, 2015, there was a hearing that encompassed both of the criminal cases against defendant, which we shall refer to as the "drunk driving case" and the "fleeing and eluding case." The hearing entailed an arraignment relative to the fleeing and eluding case and, apparently, a status conference with respect to the drunk driving case. The trial court noted that trial was scheduled for July 29, 2015, in the drunk driving case, which was to be presided over by another circuit court judge, as the trial court would not be available at that time. Defendant's appointed counsel, who represented defendant in both cases, informed the trial court that the prosecution had made plea offers in the two cases, both of which defendant rejected, desiring instead to go to trial. Defendant personally confirmed his position on the plea offers. Defendant then expressed that he had asked counsel to file two motions in the drunk driving case, but she refused. Defendant's attorney responded by indicating that she had told defendant on multiple occasions that there was no legal basis for the motions. Counsel further stated that she could not file the motions in good faith. Defendant then began arguing that a police car video in the drunk driving case showed that there was no probable cause to pull defendant over and that defendant had not been read his chemical test rights. The trial court observed that appointed counsel was not defendant's slave and had no obligation to file frivolous motions. The court stated that defendant was free to hire an attorney who could bring the motions, but defendant replied that he lacked the funds to do so. Defense counsel then indicated that she was willing to discuss the matter further with defendant. The trial court noted that counsel was a "longtime" attorney who knew "criminal law pretty well." Defendant next stated that he wished to sit down with his attorney to review the video for purposes of the drunk driving case, at which point counsel asserted that the video was extremely long and that she had given a copy of the video to defendant two months earlier. The hearing then concluded.

On July 17, 2015, in the drunk driving case, defendant's attorney filed a motion to suppress the search and dismiss the charges, along with a motion in limine to exclude prior convictions and testimony concerning the preliminary breath test. On July 29, 2015, the scheduled day of trial in the drunk driving case, the circuit court granted the motion in limine, but denied the motion to suppress and dismiss, prompting defendant to enter a guilty plea that day. At the end of the plea hearing, the circuit court pointed out to defendant that his attorney had done a fine job advocating for defendant, but the circumstances were "basically beyond her control." Defendant responded, "Yes, sir, I realize that now."[1]

On August 10, 2015, at a pretrial conference relative to the fleeing and eluding case, the prosecutor set forth a plea offer that had been made, and defense counsel indicated that, despite her recommendation to the contrary, defendant rejected the offer. Defendant personally expressed that he did not participate in the alleged offenses; therefore, he would not plead guilty. Defendant then stated that he wished to discharge counsel, as she had never given him a chance to defend himself and just wanted him to plead guilty. The trial court noted that defendant had voiced these complaints about counsel in the drunk driving case, but then he pleaded guilty. The

---

[1] The circuit court judge who ruled on the motions and accepted defendant's guilty plea in the drunk driving case is not the circuit court judge who handled the proceedings in the fleeing and eluding case; we have been and will continue referring to that judge as the "trial court."

court observed that defendant was "just unreasonable." The trial court firmly ruled that it would not be appointing defendant a new attorney and that defendant was simply attempting to waste taxpayer money. Defendant then began complaining about the police car video from the drunk driving case and how defense counsel had failed to go over the video with him, resulting in defendant being blind-sided by the video. Defense counsel adamantly informed the trial court that defendant had been given the video, that defendant indicated that he had reviewed it, and that she had talked to defendant in preparation of the trial, which never came to fruition. Defendant expressed that counsel did not represent him and that she was trying to have him plead guilty for crimes he did not commit. The trial court opined that defendant was very difficult to deal with and that any newly-appointed substitute counsel would run into the same problems with defendant that existed between defendant and current counsel. The trial court observed that appointed counsel was a competent attorney and that it was rare to receive complaints about her performance.

At a hearing on August 24, 2015, a couple of days before trial, defendant's attorney informed the trial court that defendant had told her several times that he now wanted to represent himself at the upcoming trial. The trial court asked defendant if that was how he wished to proceed, and defendant responded, "I was hoping for another lawyer, but you denied me that, so I'll represent myself." The court advised him that he should allow appointed counsel to continue representing him, as defendant did not have the training and experience that counsel had in the law. The trial court also advised defendant that it would be a serious mistake for him to represent himself and that counsel had handled many trials. Despite the court's warnings, defendant expressly indicated that he wished to represent himself at trial. The trial court revisited the issue concerning defendant's request for substitute counsel, touching on memories it had in handling part of the drunk driving case, along with information gleaned from reviewing the transcripts in that case. The court noted that defendant had complained at length about counsel in the drunk driving case, yet defendant ended up pleading guilty and then essentially conceded that counsel had performed well. The trial court reiterated, "I believe that no matter who I appoint for you, you would be unhappy." The court directed appointed counsel to be present at trial to operate as standby counsel, so as to be available to defendant for any requested assistance, although the court emphasized its view that the better course of action for defendant would be to allow counsel to simply conduct the trial. Defendant was in agreement with the standby arrangement.

On the day of trial, August 26, 2015, the trial court again advised defendant that there were big risks to representing himself, including a "lack of knowledge of the law and procedure" and an emotional entanglement that might prevent the exercise of objective and good judgment. The trial court noted that it had informed defendant of the dangers of self-representation at the prior proceeding. The court observed that if you have a medical problem, you go to a doctor, "and if you have a legal problem you seek a lawyer." The court as much as pleaded with defendant to allow counsel to conduct the trial, while acknowledging that defendant had the constitutional right to represent himself. The following colloquy then occurred:

> *The court.*  [H]aving said all that, is it still your wish to proceed to represent yourself during the trial?
>
> *The defendant.*  Yes, sir.

-3-

The trial court next informed defendant of the charges against him and the maximum punishment for each offense, warning him that a conviction might result in consecutive sentences, given that defendant was out on bond when the charged crimes took place. The court asked defendant if he understood the charges and the maximum penalties, and defendant replied, "Yes, sir." The trial court next discussed the latest plea offer made by the prosecution, obtaining defendant's confirmation that defendant was rejecting the offer. The jury trial was then conducted, and defendant was found guilty as charged. He now appeals as of right.

Defendant first argues that the trial court erred when it allowed him to represent himself at trial. Specifically, he contends that the trial court did not substantially comply with the requirements of MCR 6.005 and our Supreme Court's decision in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), with respect to self-representation and waiver of the right to counsel. This Court reviews the trial court's factual findings underlying a defendant's waiver of the right to counsel for clear error. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id.* (citations omitted).

"The Sixth Amendment of the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence.' " *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014) (citation omitted; alteration and ellipsis in original). "The analogous provision of the Michigan Constitution provides that '[i]n every criminal prosecution, the accused shall have the right to . . . have the assistance of counsel for his or her defense[.]' " *Id.*, quoting Const 1963, art 1, § 20 (alterations and ellipsis in original).

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Id.* "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, 'is the standard, not the exception,' in the absence of a proper waiver." *Russell*, 471 Mich at 189-190 (citations omitted). The *Russell* Court reviewed its earlier decision in *Anderson* and MCR 6.005(D), observing:

> In *People v Anderson,* this Court applied the . . . standard for self-representation and established requirements regarding the judicial inquest necessary to effectuate a valid waiver and permit a defendant to represent himself. Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.
>
> In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

"The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer."

In [*People v*] *Adkins* [*(After Remand)*], [452 Mich 702; 551 NW2d 108 (1996),] this Court clarified the scope of judicial inquiry required by *Anderson* and MCR 6.005(D) when confronted with an initial request for self-representation. *Adkins* rejected a "litany approach" in favor of a "substantial compliance" standard[.] [*Russell*, 471 Mich at 190-191 (citations omitted).[2]]

First, we reject defendant's argument that his request for self-representation was not unequivocal. Although initially defendant portrayed the situation as if the court had effectively forced defendant to represent himself by not allowing a substitution of appointed counsel, subsequently, as indicated in our recitation of the facts, he unequivocally communicated to the court that he wished to represent himself. Moreover, the trial court's mere denial of defendant's request for substitute counsel cannot be viewed as a ruling that improperly deprived defendant of the freedom to choose how he wished to proceed relative to representation. Later in this opinion, we affirm the trial court's denial of substitute counsel. Defendant's effort to compare this case to *Russell* is entirely misplaced, given that in *Russell*, the "defendant clearly and unequivocally *declined* self-representation." *Russell*, 471 Mich at 184 (emphasis added). Here, defendant never declined self-representation; rather, he specifically requested self-representation.

Defendant also contends that an effective waiver of the right to counsel was not obtained at the hearing conducted two days before trial, given that the trial court did not engage in any dialogue to determine whether defendant was asserting his right of self-representation knowingly, intelligently, and voluntarily, that the court did not ascertain whether defendant would disrupt or unduly inconvenience the court by representing himself, that the court failed to

---

[2] MCR 6.005(E) provides in relevant part:

If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding . . . need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,

(1) the defendant must reaffirm that a lawyer's assistance is not wanted[.]

-5-

inform defendant of the charges and the maximum possible prison sentences, that the court did not detail the specific risks of self-representation, and that the court failed to expressly find that defendant fully understood, recognized, and agreed to abide by the procedures for waiver of the right to counsel. We shall proceed on the assumption that the trial court did not obtain a valid invocation of self-representation and waiver of the right to counsel at the hearing two days before trial. Instead, we will focus our attention on the day of trial.

Defendant maintains that the record of the trial reveals that the court also failed to obtain a valid invocation of self-representation and waiver of the right to counsel at that time. Defendant argues that the trial court failed to advise him that he had a continuing right to counsel at public expense for purposes of MCR 6.005(E), that the court failed to specify the risks involved with self-representation, that the court did not ascertain whether defendant would disrupt or unduly inconvenience the court by representing himself, and that the court failed to expressly find that defendant fully understood, recognized, and agreed to abide by the procedures for waiver of the right to counsel.

With respect to defendant's argument that the trial court failed to advise him that he had a continuing right to counsel at public expense for purposes of MCR 6.005(E) (see our footnote 2), the court rule pertains to situations in which a defendant effectively waives the assistance of a lawyer and then finds himself or herself at a subsequent hearing; we, however, are assessing whether an effective waiver occurred on the day of trial. Moreover, given the history of the case, defendant was well-aware of the fact that he had a right to counsel. Indeed, defendant exercised that right earlier by accepting the services of appointed counsel and attempted to exercise it again when requesting a substitute attorney. At the trial, the court sought to convince defendant to have his now standby counsel try the case, while hesitantly expressing to defendant that he did have the right to represent himself if that was the course he wished to take. The trial court thus effectively communicated to defendant that he had a right to counsel.

Next, contrary to defendant's argument, the trial court adequately informed defendant of the risks involved in self-representation, warning him that he lacked knowledge of the law and procedure, that an attorney is the person best suited to handle legal problems, and that emotional entanglements associated with self-representation can distract one from exercising sound judgment. The court also noted that it had previously warned defendant of the risks of self-representation.[3] Under these circumstances, we hold that defendant knowingly, intelligently, and voluntarily asserted his right of self-representation. *Russell*, 471 Mich at 190. Further, as required by MCR 6.005(D), the trial court advised defendant of the charges and the maximum possible prison sentences, along with affording defendant the opportunity to consult with an attorney regarding waiver of the right to counsel. It was defendant's attorney who first indicated that defendant wished to represent himself, and she was present at the trial and available to defendant for consultation.

---

[3] At the hearing on August 24, 2015, the trial court warned defendant that "you need to be mindful of the fact that . . . the law is a complicated field, and a lawyer is required to have years of law school education [and] pass a bar exam."

Additionally, although the trial court did not expressly determine that defendant would not disrupt or unduly inconvenience the court by representing himself, we fail to see the relevancy of this factor, considering that the court allowed defendant to represent himself, thereby suggesting that the court had no real concerns about defendant's behavior. The trial court had previously opined that defendant is "reasonably intelligent." An implicit assertion in defendant's challenge regarding this factor is that he indeed should have been viewed by the court as a person who would disrupt or unduly inconvenience the court by self-representation. But defendant fails to contend that, during the trial, he actually was disruptive or that he unduly inconvenienced the court. And the record does not support a conclusion that the trial court should have found defendant potentially disruptive or a potential undue inconvenience, such that he should not have been permitted to represent himself.

Finally, we address defendant's contention that the court failed to expressly find that defendant fully understood, recognized, and agreed to abide by the procedures for waiver of the right to counsel. This requirement comes from language in *Russell*, 471 Mich at 191. It is plain to us that the trial court concluded that defendant fully understood, recognized, and agreed to abide by the waiver of counsel procedures. The court asked defendant several times if he understood the information related to waiver and self-representation given to him by the court, and defendant always responded in the affirmative. Although the trial court did not make an "express" finding, the court otherwise substantially complied with *Anderson* and MCR 6.005(D), and reversal is unwarranted for this singular failure. See *People v Campbell*, __ Mich App __, __; __ NW2d __ (2016); slip op at 4 (holding that a court's similar failure did not warrant reversal).

Defendant next argues that the trial court abused its discretion when it denied his request for substitute counsel. This Court reviews a trial court's decision on a defendant's motion for the appointment of substitute counsel for an abuse of discretion. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). In *McFall*, this Court recited the applicable principles regarding substitution of appointed counsel:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [*McFall*, 309 Mich App at 382-383 (citations and quotation marks omitted).]

Defendant maintains that there were irreconcilable differences between counsel and defendant concerning fundamental trial tactics and that there was a breakdown in the attorney-client relationship. Defendant sets forth five specific grounds in support of his argument. First,

defendant points to the disagreement below over whether to file certain motions. These motions pertained to the drunk driving case. We fail to see how a disagreement regarding the filing of motions *in a separate and distinct case* establishes a legitimate difference of opinion on fundamental trial tactics *in a different case*. The argument is meritless. To the extent that defendant relies on the dispute regarding the motions in the drunk driving case to show a general breakdown of the attorney-client relationship so as to also impact the fleeing and eluding case, the argument is not persuasive, given that counsel agreed to work with defendant and then actually filed the motions. This ground did not merit appointment of substitute counsel.

Second, defendant relies on his assertion below that he begged counsel to review the evidence with him as he sat in jail. Scrutinizing the transcript page cited by defendant in support of this argument, it is clear that defendant at the pretrial hearing on August 10, 2015, was referring to the police car video. Again, this evidence arose out of the drunk driving case, not the relevant fleeing and eluding case. Furthermore, defendant ultimately conceded during his plea that counsel had done a fine job advocating for defendant in the drunk driving case. Accordingly, we cannot conclude that counsel's performance in the drunk driving case serves as a legitimate basis to show a breakdown in the attorney-client relationship for purposes of the fleeing and eluding case. This ground did not merit appointment of substitute counsel.

Third, defendant points to his claim below that counsel failed to review the evidence with him. Checking the transcript citation of the pretrial hearing proffered by defendant, we find, once again, that this argument pertained to the drunk driving case. Therefore, it fails for the reasons enunciated in the preceding paragraph. This ground did not merit appointment of substitute counsel.

Fourth, defendant cites his complaint below that counsel failed to obtain the evidence that he needed, which he could not do on his own given his incarceration. Examining the transcript pages of the pretrial hearing cited in support of defendant's argument, the court had just informed defendant that he was headed back to jail and that counsel would do the best she could on his behalf when defendant asked, "What about the evidence I need to accumulate, Your Honor?" The trial court replied that counsel would take care of the matter. There is nothing in the transcript remotely suggesting that counsel had failed to obtain pertinent evidence or that defendant even accused counsel of failing to do so. This ground did not merit appointment of substitute counsel.

Fifth, defendant refers to his complaints below that counsel never discussed the merits of the case with him and simply wanted him to plead guilty. Merely recommending acceptance of a plea offer, which recommendation, in hindsight, defendant should have followed, did not warrant substitution of counsel. At trial, defendant stated that he wanted counsel to sit nearby, as he was "counting on her" for assistance, belying any claim of a breakdown in the attorney-client relationship. Also, comments made by counsel at the trial indicated that she was very familiar with the case and that she had discussed the case with defendant, including in regard to the subject of whether defendant should take the stand. We find that defendant's complaints essentially reflected nothing more than a general unhappiness with counsel's representation. This ground did not merit appointment of substitute counsel.

Additionally, the trial court was clearly frustrated with defendant, noting several times that defendant would have the same problems and issues with any substitute attorney. The court effectively found that defendant was engaging in gamesmanship.[4] We conclude that the record fully supports the trial court's view. Moreover, contrary to defendant's argument, defendant never voiced any sound and specific ground in support of substitution of counsel that would have necessitated an evidentiary hearing. In sum, defendant fails to show that good cause existed for the appointment of substitute counsel, and the trial court did not abuse its discretion in denying defendant's request for a new attorney.

Defendant next argues that the prosecutor violated his right to due process by repeatedly drawing attention to defendant's post-arrest, post-*Miranda*[5] silence in both his opening statement and closing argument, as well as during the direct examination of the police officer who had pursued defendant. We review de novo issues of constitutional law. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). Because defendant did not object to the prosecutor's questions or his opening and closing comments, we review defendant's argument for plain error affecting his substantial rights. *Id.*; *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *Shafier*, 483 Mich at 212-213, our Supreme Court recited the governing principles pertinent to defendant's argument:

> The United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." US Const, Am V. *Miranda* . . . established guidelines for law enforcement agencies and courts to follow in order to protect the privilege against compelled self-incrimination during custodial police interrogations. Thus, under *Miranda*, every person subject to interrogation while in police custody must be warned, among other things, that the person may choose to remain silent in response to police questioning. As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person. Therefore, in general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution. [Citations and quotation marks omitted.]

The police officer testified that after defendant was arrested, he questioned defendant at the county jail after reading defendant his *Miranda* rights. The officer asserted that defendant claimed that "he was not the one driving the truck." According to the officer, defendant stated that he had an alibi. The officer then testified, "he told me that he was not willing to provide me with any names or locations that he was at at the time." The officer indicated that defendant informed him that defendant had no obligation to divulge the nature of his alibi. Defendant then

---

[4] We note that defendant waited until two weeks before the scheduled trial to ask for new counsel.

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

asked whether the officer could get the charges dropped if defendant gave him specifics regarding the alibi. The officer responded that he would first have to investigate the alibi, at which point defendant expressed that he needed an attorney. The interrogation then ceased. At trial, defendant presented a specific alibi defense involving his girlfriend and a former girlfriend. The prosecutor adamantly commented on defendant's failure to tell the officer these details during the interrogation and on defendant's affirmative statement that he would not provide the officer with details, rendering unbelievable the alibi proffered at trial. The prosecutor argued that defendant did not give the officer the particulars of the claimed alibi because defendant had not yet concocted the phony alibi that was presented for the first time at trial.

In *Berghuis v Thompkins*, 560 US 370, 381-382; 130 S Ct 2250; 176 L Ed 2d 1098 (2010), the United States Supreme Court held:

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and . . . provides guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights might add marginally to *Miranda*'s goal of dispelling the compulsion inherent in custodial interrogation. But as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process.

> Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning. Here he did neither, so he did not invoke his right to remain silent. [Citations, quotation marks, and alteration brackets omitted; ellipsis in original.]

In the instant case, once defendant validly waived his right to remain silent by participating in the interrogation, the officer was permitted to continue to interrogate defendant until defendant unambiguously asserted his right to remain silent. Defendant simply did not invoke his right to remain silent and end the interrogation prior to stating that he had an alibi and that he would not share the details of the alibi with police. Indeed, defendant thereafter continued to freely speak with the officer, with the interrogation only ending when defendant later indicated that he needed a lawyer. Moreover, the officer's testimony and the prosecutor's remarks concerned defendant's *actual statements*, not his mere silence. For that reason, the facts are not similar to those in cases where the defendant's silence had little or no probative value because it occurred after the defendant received *Miranda* warnings and reflected nothing more than the exercise of the arrestee's right to remain silent. See *Doyle v Ohio*, 426 US 610, 617-618; 96 S Ct 2240; 49 L Ed 2d 91 (1976); see also *Shafier*, 483 Mich at 215-217 (relating that

the defendant made no statements when arrested and that the prosecutor relied on his silence in the face of the accusations against him as evidence).

Further, assuming plain error, we simply cannot conclude that defendant was prejudiced by the presumed error, i.e., "that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Additionally, the assumed error did not result in the conviction of an actually innocent defendant or seriously affect the fairness, integrity, or public reputation of the proceedings. *Id.* Reversal is unwarranted.

In defendant's Standard 4 brief, he argues that he is entitled to a new trial because the trial court was biased against him, that the trial court actively participated in the plea bargaining process and then punished him with a more severe sentence after he rejected the plea, that trial counsel was ineffective in numerous instances, and that the trial court wrongfully revoked his bail and, thereafter, wrongfully refused to allow him to be released on bail pending trial. After careful review, we reject all of these frivolous arguments, given that they are wholly unsupported by the record and or the law, or would not justify reversal even if meritorious; nothing argued by defendant supports reversal of his convictions or sentences.

Affirmed.


/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle