COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONNA KAY SCRIVO,

        Defendant-Appellant.

UNPUBLISHED
June 20, 2017

No. 330292
Macomb Circuit Court
LC No. 2014-003257-FC

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), disinterment, mutilation, defacement, or carrying away of a human body (mutilation of a human body), MCL 750.160, and removing a body without medical examiner permission, MCL 52.204. The trial court sentenced defendant to life in prison without parole for the first-degree murder conviction, 57 months to 10 years in prison for the mutilation of a human body conviction, and one year for the removal of a body conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the death of her son, 32-year-old Ramsay Scrivo, and the dismemberment of his body, the remains of which were discovered in 12 pieces near Fred Moore Highway and Allington Road in St. Clair County. The prosecution presented evidence that defendant drugged her son with Xanax,[1] strangled him, dismembered his body, and scattered the remains along the highway.

Defendant was living with the victim at the time of his death. The victim's neighbors testified that they last saw him on January 24, 2014. On January 30, 2014, defendant was observed in a silver SUV along Fred Moore Highway and Allington Road driving slowly and

---

[1] Xanax is a brand name for the prescription drug alprazolam and is used to treat anxiety disorder; symptoms of a Xanax overdose include "extreme drowsiness, confusion, impaired coordination, diminished reflexes, fainting, or coma." Everyday Health, *What is Xanax (Alprazolam)* <http://www.everydayhealth.com/drugs/xanax> (accessed May 19, 2017).

disposing of something from the SUV. Earlier that day, and also on the previous day, defendant was seen by the victim's neighbors loading large garbage bags into her vehicle. Later that day authorities found the victim's remains scattered in bags along Fred Moore Highway and Allington Road. Along with the victim's remains, authorities also found a power saw that was the same model number that witnesses recalled defendant purchasing from a Lowe's store earlier that week.[2] A subsequent search of the victim's home did not reveal any large blood stains, but investigators did testify to a strong smell of bleach and the existence of small blood stains. One of the victim's neighbors also testified that between January 25 and January 30 she heard a saw being used and that during the same time, she smelled both a burning and chemical odor emanating from the victim's apartment.

The medical examiner who performed the victim's autopsy, Dr. Daniel Spitz, testified that the cause of death was asphyxiation and that, due to large amounts of Xanax in his system, he believed that the victim had been drugged before being killed. Defendant had a prescription for Xanax and a search revealed 10.5 pills missing from her most recent prescription. An analysis of defendant's and the victim's cell phone records also did not reveal any calls made from the defendant to the victim after January 24 despite several witnesses testifying that defendant asked them if they had seen the victim and defendant's filing of a missing person's report for the victim.

Defendant testified in her own defense. According to her testimony, on the morning of January 26, 2014 she observed a masked man in the victim's room who said he was going to kill the victim. Defendant testified that this man tied her to the bed and then brought her back into the victim's bedroom when he had finished killing the victim. Defendant testified that the man remained five days but that she never saw his face due to the mask he was wearing. Defendant stated that the man then made her help dispose of the victim's body threatening to harm further members of her family if she did not comply.

## I. PROSECUTORIAL MISCONDUCT

Defendant argues that she was denied a fair trial by the prosecutor's conduct of (1) asking questions and commenting on her exercise of her right to remain silent after her arrest; (2) introducing inadmissible and irrelevant evidence; and (3) yelling at and arguing with witnesses. Although some of the prosecutor's conduct was improper, we disagree that it prejudiced defendant or denied her a fair trial.[3]

---

[2] Although the saw found along the highway matched the model number of the one defendant purchased earlier that week, because the saw did not have a specific identification number on it, it could not be definitively determined that the saw found on the highway was the exact saw that defendant purchased.

[3] Defendant did not object to the alleged questions and comments regarding her right to remain silent or to the alleged introduction of evidence that she was a bad person. Therefore, these claims are unpreserved and are reviewed for plain error affecting substantial rights. *People v Jackson*, 313 Mich App 409, 425; 884 NW2d 297 (2015). Defendant did object to some

## A. DEFENDANT'S RIGHT TO REMAIN SILENT

During the prosecutor's cross-examination of defendant, the following exchange occurred:

*Q*. You see, you were picked up on the night of January 31, 2014. You spoke to the police for two hours that night. You didn't tell them this story, did you?

*A*. No, sir.

The exchange continued:

*Q*. That, but you, we had to wait 16 months to hear this story about this intruder?

\* \* \*

*A*. The night that the Detective [Margaret] Eidt walked me to the holder cell I was pretty crazed. But I do remember asking: Can you please talk to me tomorrow afternoon? And I got no response.

*Q*. Well, wasn't there a reason?

*A*. Then I asked my first attorney to please let me do, talk to them and do a polygraph test.

*Q*. You invoked Miranda.[4] We can't talk to you after you say that. That is why we don't come to you. They can't ask those questions.

Then again, during his closing argument, the prosecutor argued:

Next, another thing, okay, point I was making during cross. She sees the murderer for six days, gives the height, weight, sound of the voice, looks at his face. . . . Do you not think that those are significant number of clues?

\* \* \*

But we sit on it instead. We play the martyr. She prefers to remain charged and 16 months before I hear the details, mother of the year. I don't think so.

---

instances of the prosecutor yelling at or arguing with witnesses. The trial court then instructed the prosecutor to control his tone and not argue with the witness. Therefore, these claims are preserved and are reviewed "de novo to determine if the defendant was denied a fair and impartial trial." *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004).

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

"[I]f a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person." *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009). "[A] defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony." *Id*. at 213 (citations omitted). Additionally, while a prosecutor is allowed to inquire about a defendant's silence to rebut a defendant's claim that she told the same exculpatory story to police upon arrest, *Shafier*, 483 Mich at 214 n 10, defendant had not offered any testimony about telling the police her exculpatory story at the time the prosecutor first made inquiries about her post-arrest, post-*Miranda* silence. While defendant did eventually testify that she told an officer in the hospital about the masked man, this testimony came only after the prosecutor's initial questioning of her silence and invocation of *Miranda*. This initial questioning was, therefore, clearly improper.

However, because there was no objection, our review is limited to determining whether the prosecutor's conduct amounted to plain error that affected defendant's substantial rights. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425; 884 NW2d 297 (2015). Therefore, defendant is not entitled to relief unless the prosecutor's actions "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Given the strength of the evidence in this case, we do not believe the prosecutor's improper comments affected the outcome of the trial.

A saw was used, in part, to dismember the victim's body, and during the time that the victim was missing, defendant purchased the same type of saw as was found near the victim's body with his blood on it. The victim had a significantly elevated level of Xanax in his system, defendant had a prescription for Xanax, and 10.5 pills from her prescription were unaccounted for at the time of her arrest. Defendant was seen carrying black bags out of the victim's condominium and putting them into a silver Blazer. She was also seen driving the Blazer and dumping items that were later determined to be the victim's body parts. She subsequently took items out of the Blazer, removed the license plate, and donated the vehicle. The victim's blood was found in the vehicle. When defendant reported the victim missing, she was wearing gloves similar to those found with the victim's body parts. Her DNA was also found on one of those gloves. Several witnesses testified that defendant told them that she called the victim after he went missing, but there were no calls from her phone to the victim's phone after January 25, 2014.

Additionally, defendant's own account of events was not credible. She presented no corroborating evidence for her account that a masked man was responsible for her son's murder and thereafter stayed at the home for five days to dismember the body, all the while she was able to go to a Lowe's store and to her car insurance agent. And her testimony that this masked man also injured her was contradicted by several witnesses who saw her during the week preceding her arrest and who testified that she did not have visible injuries. Accordingly, defendant cannot establish prejudice, and despite the prosecutor's improper conduct, she is not entitled to relief on this basis.

## B. INTRODUCTION OF CHARACTER EVIDENCE

Defendant argues that the prosecutor improperly presented character evidence to show that she is a bad person. Several of defendant's claims of error come from the testimony of

Allison Furtaw, who was the defendant's sister-in-law and the victim's aunt. The others come from the prosecutor's comments during defendant's own testimony and during the testimony of defense witness, Ann Cusmano.

Initially, we agree with defendant that portions of the prosecutor's cross examination of her were improper. Specifically, the prosecutor acted inappropriately during the following exchange concerning defendant's other son, Jason:

> *Q.* Okay. But now you're not afraid for Jason and the niece any more and the nephew?
>
> *A.* Do you see my son Jason here?
>
> *Q.* Hell, I haven't seen him since this case started. He won't return my calls?
>
> *A.* You got that right.
>
> *Q.* Because he doesn't like you, and he thinks something else happened.
>
> *A.* And he verbally told you that?
>
> *Q.* Not me, but somebody else.
>
> *A.* We're going with hearsay.
>
> *Q.* Oh, your whole testimony is hearsay. Okay. Don't talk to me about hearsay.

The prosecutor's comment was not a question and, as defendant argues, it suggested that Jason believed defendant may have been involved in the victim's death. Additionally, the prosecutor's questioning was overly argumentative. However, defense counsel objected, the trial court sustained the objection, and the prosecutor was instructed by the trial court to pose a question and not argue with the witness. Therefore, any prejudice caused by the prosecutor's improper conduct was swiftly and appropriately corrected by the trial court. *People v Mann*, 288 Mich App 114, 121-122; 792 NW2d 53 (2010) (concluding that the appropriate response to an improper remark by the prosecutor is a limiting instruction).

During his examination of Furtaw, the prosecutor elicited testimony that one of the causes of defendant's husband's death was an infection on his hip where defendant had given him a B-12 injection. The prosecutor also elicited testimony from Furtaw that at least implied that defendant had been terminated from her previous job due to possible misconduct. Defendant argues that such testimony should have been excluded under MRE 404(b), which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In both instances, we agree with defendant that Furtaw's testimony should have been excluded. While Furtaw's testimony about the death of defendant's husband at most suggests defendant was somehow accidentally responsible for her husband's death, it is not at all clear why this testimony was in any way

-5-

relevant and given its potential for prejudice, it should have been excluded. Additionally, while the questions about defendant's separation from her past employment were arguably aimed at rebutting statements defense counsel made in his opening statement, we also fail to see the relevance of this testimony and agree that it had the potential to draw attention to defendant's character in an impermissible way.

However, defendant has not framed this issue as evidentiary error and has instead claimed that the prosecutor committed misconduct by eliciting this testimony. Our determination that the testimony should have been excluded is made in the abstract and not in the context of reviewing an evidentiary ruling of the trial court. Had the trial court admitted the testimony and permitted the argument over objections, it is likely that such a ruling would have amounted to a proper exercise of its discretion not subject to reversal on appeal. The fact that the prosecution had a colorable argument for the admissibility of these portions of Furtaw's testimony is sufficient for us to conclude that its actions did not amount to misconduct, even if we ultimately disagree on the underlying evidentiary question.

Defendant also argues that the prosecutor improperly portrayed her as a bad person during his questioning of Ann Cusmano. Defendant had called Cusmano as a defense witness, and she testified that defendant was a good mother whom Cusmano did not believe was capable of hurting her sons. Then, on cross examination, the prosecutor challenged Cusmano's testimony by stating, "Because in fact she is such a good mother that Jason wants nothing to do with her; won't take her phone calls, isn't coming back from New Orleans. That is how good of a mother she is." Because defendant opened the door concerning her character as a mother, it was not improper for the prosecution to attempt to rebut the same, MRE 404(a)(1), including by making references to specific instance of conduct on cross-examination, MRE 405(a). Defendant also complains that the prosecutor improperly yelled at and argued with Cusmano. During the prosecutor's cross-examination of Cusmano, defense counsel objected that the prosecutor was arguing with the witness. The trial court directed the prosecutor to control his tone. This instruction alleviated any prejudicial effect.

## C. CUMULATIVE EFFECT OF ERRORS

Lastly, defendant argues that the cumulative effect of the prosecutor's improper conduct denied her a fair trial. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc,* 465 Mich 575, 591; 640 NW2d 246 (2002). As discussed, the prosecutor improperly asked questions about and commented on defendant's right to remain silent, suggested that Jason believed defendant was guilty, and argued with witnesses. However, in this case, evidence of defendant's guilt was clearly overwhelming. Given that, as well as the trial court's curative instructions, we not find sufficient prejudice to undermine confidence in the reliability of the jury's verdict. See *id*. at 591 n 12 (finding that a claim of cumulative error also requires a showing of prejudice).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In order to obtain relief on an ineffective assistance of counsel claim, defendant must show first, "that counsel's performance was deficient," and second, that "the deficient

performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy . . . ." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). To establish prejudice under *Strickland*, a defendant is required to show that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Jackson*, 313 Mich App at 432 (citation and quotation marks omitted).[5]

## A. FAILURE TO OBJECT TO THE PROSECUTOR'S CONDUCT

Defendant argues that trial counsel should have objected to (1) the prosecutor's questions and comments regarding her right to remain silent; and (2) the prosecutor's interjection of inadmissible and irrelevant evidence. As discussed in Part I, the prosecutor's questions and comments regarding defendant's right to remain silent were improper. Further, the prosecutor improperly suggested that the victim's brother, Jason, believed defendant was involved in the victim's death. Trial counsel's failure to object to these errors was not objectively reasonable. Nonetheless, trial counsel's failure to object did not prejudice defendant given the trial court's instruction that the lawyers' comments are not evidence and the overwhelming evidence of defendant's guilt. In light of this body of evidence, there is no reasonable probability that the outcome of trial would have been different if defense counsel had objected.

## B. FAILURE TO CALL EXPERT WITNESSES

Defendant argues that trial counsel was ineffective for failing to call expert witnesses to testify regarding (1) the ingestion and metabolization of Xanax, (2) the ability of a 100-pound, 60-year-old woman to strangle and move a 250-pound, 32-year-old man; and (3) defendant's bruises following her arrest. Defendant argues that such experts would have supported the testimony of the medical examiner that the Xanax could not have been injected, attested to the improbability of defendant forcing or deceiving the victim into ingesting enough Xanax to induce unconsciousness, attested to the improbability of defendant manually strangling and moving the victim from the bedroom to the bathtub, and showed that defendant's bruising had occurred earlier in the week before her arrest.

Decisions regarding whether to retain witnesses, including expert witnesses, are presumed to be matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "[T]he failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id.* (citation and quotation marks omitted). Defendant has not made an offer of proof regarding the proposed expert testimony she

---

[5] Because no hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), was held to create a factual record, our review is limited to mistakes apparent on the record. *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994).

believes should have been presented at trial. She merely speculates that expert witnesses could have provided testimony favorable to the defense. Without an appropriate offer of proof, defendant has failed to establish the factual predicate for her claim. She has failed to show that such expert witnesses would have affected the outcome of the trial.

## C. FAILURE TO CALL OFFICER DRULA AS A WITNESS

Defendant argues that trial counsel was ineffective for failing to secure the testimony of Officer Jessica Drula concerning statements defendant claims she made to Drula. According to trial counsel, Drula would have testified that while she was removing defendant's handcuffs, defendant asked Drula to stand in front of a little man staring at her, even though there was no one behind Drula. Defendant then allegedly told Drula, "[T]hat little man in black looked just like the one that killed my son." Defendant argues that her trial counsel should have sought to secure Drula's testimony about what defendant said to her under MRE 803(1), the present sense impression exception to the hearsay rule. However, while defense counsel initially sought to admit Drula's testimony as a non-hearsay, prior consistent statement, when the trial court rejected that argument,[6] trial counsel alternatively sought admission of the statement under MRE 803(1) arguing that defendant's statement to Drula was a statement describing or explaining an event or condition while defendant was perceiving the event or condition or immediately thereafter. Accordingly, defendant's contention on appeal is incorrect. Trial counsel did seek to introduce the testimony under the same theory presented by defendant on appeal, but the trial court disagreed and denied the admission of the testimony.[7]

## D. FAILURE TO REQUEST A MISTRIAL

Defendant argues that trial counsel should have requested a mistrial after the penalties for the crimes charged were inadvertently included in the instructions given to the jury. After the jury was selected, the jurors were handed a packet of instructions. As the trial court began to give the instructions, trial counsel approached the bench and informed the court that the felony information was attached to the jury instructions, which identified the penalties for each offense. The prosecution had prepared the instructions, and it could not explain how this had happened. The trial court asked each juror what he or she saw. Eight jurors indicated that they had read the

---

[6] The trial court rejected this argument and ruled that because the statement was made after defendant was in custody and, thus, had a motive to fabricate, the statement could not qualify as a prior consistent statement.

[7] Defendant was ordered to attend an evaluation relative to criminal responsibility at the State's Center for Forensic Psychology. Additionally, defendant's trial counsel requested the trial court appoint an independent expert for an evaluation of criminal responsibility, and the trial court granted this request. While the results of these evaluations are not contained in the record, presumably they were not favorable to an insanity defense, as defendant did not present an insanity defense at trial, and she has not argued that trial counsel was ineffective for failure to pursue such a defense on appeal.

first sheet. Of those, four jurors indicated that they had read the penalties.[8] The trial court instructed those jurors not to share the penalties with their fellow jurors. Then, after conducting its own research, the trial court ruled that the error was harmless and that it intended to give a "very strong" curative instruction to the jurors. Defendant's trial counsel stated that his "independent research led [him] to no case law which would deem this anything other than harmless error," and requested that the trial court give the additional curative instruction. The trial court then instructed the jury that the possible penalty should not influence its decision.

Defendant has failed to overcome the presumption that trial counsel's decision to request a curative instruction, rather than a mistrial, was sound trial strategy. Further, "[a] mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (citation and quotation marks omitted). Because a curative instruction was given, and jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), the fairness of the trial was not affected, nor was defendant prejudiced. Thus, trial counsel's failure to request a mistrial was not unreasonable, and there is no reasonable probability that it affected the outcome of the trial.

### E. FAILURE TO OBJECT TO THE ADMISSION OF AUTOPSY PHOTOGRAPHS

Defendant argues that trial counsel was ineffective for failing to object to the admission of autopsy photographs. During the testimony of Dr. Spitz, the prosecution admitted into evidence several autopsy photographs. Trial counsel indicated that he had no objection because any objectionable material had been eliminated after a motion in limine was filed and the attorneys conferred. We have held that autopsy photographs may be relevant where the nature, type, and location of a victim's injuries are at issue and where the photographs are necessary to illustrate and augment the complex medical testimony. *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008). Moreover, "[w]hile gruesome photographs should not be admitted solely to garner sympathy from the jury, a photograph that is admissible for some other purpose is not rendered inadmissible because of its gruesome details." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 544; 775 NW2d 857 (2009).

Defendant has failed to overcome the presumption of sound trial strategy given that trial counsel successfully moved to exclude the autopsy photographs that he believed were objectionable. Moreover, contrary to defendant's argument, the photographs were relevant because the photographs showed the post-mortem cuts and charring described by Dr. Spitz, the blue plastic material on the victim's body, and the mark on the victim's neck, which Dr. Spitz testified was related to the cause of death. The photographs also helped explain Dr. Spitz's testimony that some of the cuts were made by a saw. The photographs were not admitted solely to garner sympathy from the jury. Because the photographs were relevant and not unfairly prejudicial, they were admissible, and trial counsel was not ineffective for failing to further object to their admissibility.

---

[8] Juror Numbers 2 and 12 only saw the penalties for Count 1, and Juror Numbers 3 and 4 saw the penalties for Counts 1 and 3.

## F. FAILURE TO OBJECT TO CERTAIN EVIDENCE FROM CRIME SCENE

Defendant argues that trial counsel should have objected to the admission of certain evidence arguing that that evidence was tainted when the victim's cousin, James Scrivo, was allowed to walk through the crime scene. Detective Sergeant Jay Cohoe testified that James Scrivo was with the officers during the second search of the victim's condominium and that he recovered the ashes of the victim's father from the kitchen but that he did not take or touch anything else. Thus, contrary to defendant's argument, there was no indication that any evidence was tainted and an objection would have been futile.

## G. FAILURE TO PERSUADE DEFENDANT NOT TO TESTIFY

Defendant argues that trial counsel should have persuaded her not to testify. At trial, defendant affirmed that she understood that she had the right to remain silent, her attorney had explained that right to her, and she understood that she could choose to testify, but would be subject to cross-examination by the prosecutor. Defendant indicated that she wished to testify, that she had given it a lot of thought, and that she was certain. During cross-examination by the prosecutor, however, defendant said, "Sir, I didn't want to testify. I'm going to be confused. I'm going to misspeak."

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011) (citations omitted). Because it was defendant's decision whether to testify, her claim that trial counsel was ineffective for failing to persuade her not to testify is meritless. Despite her subsequent indication on cross-examination that she did not want to testify, she clearly stated that defense counsel had explained to her that she had the right not to testify, that she had given the issue much thought, and that she was certain that she wanted to testify when she was questioned by her attorney. Trial counsel explained defendant's rights to her, but he could not *persuade* her not to exercise her right to testify. Therefore, trial counsel was not ineffective.

## H. CUMULATIVE EFFECT OF ERRORS

Defendant argues that the cumulative effect of trial counsel's errors requires reversal of her convictions. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc,* 465 Mich at 591. However, as our Supreme Court explained, " 'cumulative error,' properly understood, actually refers to cumulative unfair *prejudice*, and is properly considered in connection with issues of harmless error." *Id*. at 591 n 12. As discussed earlier, trial counsel's failure to object to two instances of the prosecutor's improper conduct did not prejudice defendant given the overwhelming evidence of defendant's guilt. Accordingly, there was no unfair prejudice to accumulate.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support her conviction of first-degree premeditated murder. In reviewing a claim that the evidence was insufficient to support a

conviction, we must view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). "Circumstantial evidence and any reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (2000). We "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

As we have already discussed, the evidence of defendant's guilt in this case was strong enough to preclude a finding of prejudice concerning defendant's claims of prosecutorial misconduct or ineffective assistance of counsel. Therefore, the evidence was certainly sufficient to justify a rational trier of fact's determination that defendant committed each element of the charged offenses. Defendant argues that the prosecution failed to prove how the victim ingested Xanax and how she could have strangled and moved the victim. However, the prosecution was not required to prove the exact details of how defendant committed the crime. The evidence presented, as well as the reasonable inferences that could be drawn from that evidence were sufficient to show that defendant committed each element of the charged offense. The jury apparently did not find credible defendant's testimony that a man wearing a mask committed the offenses, and we will not interfere with that determination. See *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016) ("[T]he reviewing court will not interfere with the fact-finder's role of deciding the credibility of witnesses.").

Affirmed.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro