*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AMOS MUSHATT,

Defendant-Appellant.

UNPUBLISHED
June 20, 2025
1:31 PM

No. 370093
Ingham Circuit Court
LC No. 23-000132-FC

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. We affirm.

## I. FACTUAL BACKGROUND

This case arises from defendant's sexual abuse of his daughter in the summer and fall of 2021, when she was eight years old. The victim disclosed to her mother that defendant sexually abused her, but when confronted, defendant said that the victim was lying. The victim's mother severed contact with defendant. She did not, however, make a report to the police or Children's Protective Services (CPS). Several months later, the victim disclosed the abuse at school. This prompted a referral and an investigation ensued. It ultimately led to defendant's prosecution.

Relevant to this appeal, during voir dire, the trial court stated that the court clerk would call the jurors selected by their "pool sequence numbers." The trial court referred to the prospective jurors by sequence numbers and by seat numbers for the duration of jury selection. The prosecutor and defense counsel both stated that they had access to the juror questionnaires for the individual jurors.

During the trial, the jury heard testimony from a CPS investigator, a Lansing police detective, the victim's mother, and the victim herself. The CPS investigator testified that she received a complaint regarding the abuse and was able to perform a wellness check while the victim was in school. The victim disclosed the abuse to the investigator during the wellness check.

The investigator also spoke with the victim's mother at the school and made a safety plan for the victim. The investigator testified that she had attempted to speak with defendant multiple times, but he refused to speak to her. The police detective likewise stated that defendant refused to speak with him.

The victim's mother testified that she confronted defendant about the abuse and that he claimed the victim was lying. The victim's mother explained that she did not contact CPS or the police because she "didn't think that this was something I would be strong enough to do." However, she told the victim that she would support her if she wanted to tell somebody about the abuse. The victim thereafter disclosed the abuse at school. The victim's mother testified that the victim was seeing a therapist, and that she often got very emotional and suffered from anxiety following the abuse.

The victim, who was 11 years old at the time of trial, testified regarding defendant's conduct. Portions of the preliminary examination were read into the record as substantive evidence under MCR 801(d)(1) because the victim's testimony was inconsistent with her previous sworn statements. A forensic interview specialist with the Children's Advocacy Center of Southwest Michigan testified as an expert in the field of child sexual abuse and the dynamics concerning child sexual abuse. She testified that, no matter the age of the child, there is a delay in disclosure of sexual abuse. The expert explained that children may only disclose enough to make the abuse stop and that the substance of those disclosures may be different during the forensic interview, during treatment, during the preliminary examination, and during trial.

Defendant elected to testify. In response, the prosecutor stated that they planned to admit portions of defendant's criminal history to impeach him under MRE 609. Specifically, the prosecutor explained that they would introduce evidence that defendant had been convicted in Ohio of receiving and concealing a stolen motor vehicle in March 2022, and convicted in Pennsylvania of theft by unlawful taking or disposition in September 2022. The prosecutor indicated that both of these crimes are felonies involving an element of theft. Defendant conceded that the convictions could be introduced under MRE 609 and did not oppose their introduction so long as the details of the convictions were not introduced.

When asked why he was convicted of theft-related crimes in Ohio and Pennsylvania, defendant explained that his behavior was a response to "this type of pain, this type of frustration, this type of madness" connected with the victim's disclosures. He explained that he was so distraught that he behaved in a manner that he "didn't even see coming." Defendant was also asked about his decision not to speak to CPS or the police. He stated that he declined to do so because he did not want to "hear about that stuff" since he was not in a "stable state of mind." Defendant testified that he regretted not speaking with CPS and the police. He further stated that he believed the victim's mother was coaching the victim to accuse him of sexual abuse. Defendant additionally stated that in 2021, the victim told him that she had been sexually abused by some of her mother's friends and her mother's current boyfriend. Defendant testified that he was upset after hearing the victim say these things and that he vowed to "get to the bottom of it." He maintained that he was innocent of the charges against him. Defendant was ultimately convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. JURY SELECTION

Defendant first argues that the trial court erred by referring to jurors by number, instead of by their names. He claims that as a result, he was erroneously tried by an anonymous jury and that the trial court failed to mitigate the prejudice caused by this practice by giving a cautionary instruction to the jury. We disagree.

Defendant failed to preserve this issue by raising it in the trial court. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012) ("A defendant must raise an issue in the trial court to preserve it for [appellate] review."). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*.

An anonymous jury is "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Hanks*, 276 Mich App 91, 93; 740 NW2d 530 (2007) (quotation marks and citation omitted). "An anonymous jury implicates the following interests: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 93 (quotation marks and citation omitted). "A challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id*. However, a jury is not truly considered anonymous unless "something more than just the jurors' names is withheld from the parties." *Id*. This Court has advised trial courts that they should inform the venire that the use of numbers instead of names is purely logistical and should not be considered "a negative against the defendant." *Id*. at 94.

In this case, defendant had access to biographical and identifying information about the jurors. He has provided no evidence indicating that he was unable to conduct meaningful voir dire because of the use of juror numbers. Moreover, nothing in the record supports defendant's claim that there was "a real likelihood" that one or more of the jurors concluded that their names were withheld in order to allow them to render a guilty verdict without fear of retaliation. In fact, the trial court instructed the jury on the presumption of innocence, and "[j]urors are presumed to follow the instructions of the court." *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). Thus, defendant's trial was only held before an anonymous jury "in a literal sense," purely because the jurors were referred to by pool number. The record contains no evidence that any of the potential dangers stemming from anonymous juries were present here. See *Hanks*, 276 Mich App at 94. The use of juror numbers was therefore not a violation of defendant's due-process right to a fair and impartial jury. Accordingly, defendant has failed to show plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## B. PROSECUTORIAL MISCONDUCT[1]

Defendant next argues that the prosecutor committed misconduct during her direct examination of the detective and during closing argument. We disagree.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *Brown*, 294 Mich App at 382. Defense counsel did not object to any of the statements that defendant claims were prosecutorial misconduct, so this issue is unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*.

Defendant first contends that the prosecutor committed misconduct by soliciting testimony from the detective that defendant refused to speak with him. Defendant argues that by doing so, the prosecutor violated his Fifth Amendment right against self-incrimination. "Every person has a constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). "As a general rule, if a person remains silent after being arrested and given *Miranda*[2] warnings, that silence may not be used as evidence against that person." *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009). "[P]rosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due-process rights under the Fourteenth Amendment of the United States Constitution." *Id*. at 212-213. However, "[a] defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda* warnings have been given." *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005).

The following exchange took place during direct examination:

> *Q*. Did you attempt to interview the defendant prior to submitting your investigation for review to the Ingham County Prosecutor's Office?
>
> *A*. I don't believe it was prior to submission to the Ingham County Prosecutor's office. Again, I'm not sure on the timeline of how things were submitted, but I do remember the—Elizabeth Panek from CPS had informed me that they had reached out to speak to [defendant]. He declined. She also sent me a phone number. This is not in my report, but I reached out. I believe I remember speaking with [defendant] over the phone, who also declined speaking with me. Again, not in my report, but it was a phone call of that this didn't happen. I can't say at 100 percent sure. I'd have to go back and check on some phone records to make sure that it was him and not involved in a different case.

---

[1] We note that "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals . . . [but] these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88, 867 N.W.2d 452 (2015).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

At most, the testimony that the prosecutor elicited referred to defendant's prearrest silence, given that CPS and the police unsuccessfully attempted to contact him during the investigation. Consequently, defendant's right against self-incrimination was not implicated, and no prosecutorial misconduct occurred. Because defendant has not established that the prosecutor's questioning of the detective amounted to misconduct, he cannot establish plain error affecting his substantial rights.

Defendant next argues that the prosecutor committed misconduct during closing argument by stating that defendant fled the state and was stealing cars in Pennsylvania and Ohio. Defendant points to the following portion of the prosecutor's closing argument:

> He claims to be this protective, "I will do anything. I will confront anyone. I will get to the bottom of this" dad, but you let her get in the car to go home? You didn't call the police? You didn't file an emergency paperwork with the court to say, "Hey, I need custody of my daughter. She's in danger." He didn't do any of that. He never reported this alleged abuse to anyone until we were here. Instead, he threatened [the victim's mother] and [the victim]. Said, "I'm gonna [sic] come to your house. I'm gonna [sic] get to the bottom of this myself. I'm not gonna [sic] do this the way that, you know, you could be investigated by the authorities, you could be looked at." He said, "I'm gonna [sic] get to the bottom of it myself." But then did he do that? No. He got in his car and he fled the state. Was in Ohio stealing cars, was in Pennsylvania stealing cars.

"Generally, prosecutors are accorded great latitude regarding their arguments and conduct. They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (cleaned up). Additionally, "[a] prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Meissner*, 294 Mich App at 456. The undisputed evidence presented in this case revealed that defendant was in Ohio and Pennsylvania in 2022, and that he was convicted of theft-related felonies in both states. Defendant's own testimony supported the prosecutor's statements.

Defendant nevertheless takes issue with the prosecutor's use of the word "fled," arguing that by using that word, the prosecutor impermissibly drew an inference about defendant's guilt. We note that prosecutors "are not limited to presenting their arguments in the blandest terms possible." *Id*. Moreover, when read in context, it does not appear to us that the prosecutor made any comments about defendant's guilt; rather, her comments appear to be geared toward questioning the credibility of defendant's testimony that the victim told him she was being abused by her mother's friends and boyfriend. The prosecutor pointed out to the jury that, rather than living up to his promise to find out who was abusing the victim, defendant elected to remove himself from the victim's life, and committed multiple out-of-state crimes in the meantime. A prosecutor may "argue that a defendant's story is unworthy of belief as long as such argument is based on the evidence . . . ." *Id*. at 457. There is no doubt that such was the case here. Accordingly, the prosecutor's comments in this case were not improper.

Even if the prosecutor had directly stated that defendant fled the state because he was attempting to avoid prosecution, "a prosecutor may comment on the inferences that may be drawn

-5-

from a defendant's flight." *McGhee*, 268 Mich App at 635. Moreover, were we to find that defendant had established plain error, reversal is not warranted "where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). The trial court instructed the jury that the lawyers' statements and arguments were not to be considered as evidence and that they were to apply the law as given by the court to the facts of the case. "Jurors are presumed to follow the instructions of the court." *Meissner*, 294 Mich App at 457. There is nothing in the record to suggest that the jury erroneously considered the prosecutor's statements as evidence. Defendant therefore cannot establish that plain error occurred.

## C. MRE 609

Defendant also argues that the trial court erred by admitting his Ohio and Pennsylvania convictions because neither conviction contained an element of dishonesty, false statement, or theft. To preserve an evidentiary issue for review, the party opposing the admission of the evidence must object at trial and must specify the same ground for objection that is asserted on appeal. MRE 103(a)(1); *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Trial counsel did not object to the admission of the evidence. Instead, he stated:

> I have spoken with [defendant], and we've anticipated that we would get—that 609 would come into play because of those convictions, and the prosecution is correct that they fall pretty square within the purview of that rule, and he's fine with that. We anticipated it, and we're not opposing [the prosecutor] bringing them [in] so long as it's simply the convictions and not the details[.]

Defendant waived this issue by expressly approving of the court's decision to admit the evidence under MRE 609. "[W]aiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7 (quotation marks and citation omitted). A defendant may waive an issue "by expressly approving of the trial court's action[,]" as was the case here. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). We thus decline to address the merits of defendant's claim.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that defense counsel was constitutionally ineffective for (1) failing to object to the prosecutor's questioning of the detective; (2) failing to object to the prosecutor's statement regarding his flight from the state during closing argument; and (3) eliciting testimony regarding his refusal to speak with CPS or the police. We disagree.

Defendant failed to preserve his claim of ineffective assistance of counsel by moving for a new trial or a *Ginther*[3] hearing. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Accordingly, our review of this claim "is limited to mistakes apparent on the record." *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011).

To establish that defense counsel's performance was constitutionally deficient, a defendant must demonstrate that "(1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008); see also *Strickland v Washington*, 466 U.S. 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Defendant's arguments pertaining to defense' counsel's failure to object to the prosecutor's questioning of the detective and comments during closing argument are directly related to his claim of prosecutorial misconduct, discussed in Section II(B) above. For the reasons discussed therein, defendant has not established that prosecutorial misconduct occurred in this case. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Accordingly, defendant cannot establish the factual predicate for his claim.

We thus turn to defendant's contention that defense counsel was ineffective for eliciting testimony from the CPS investigator that defendant refused to speak with her. In support of this argument, he points to the following exchange:

> *Q.* Did you speak to [defendant]?
>
> *A.* We attempted to speak with him several times. He declined to speak with us.
>
> *Q.* Okay. Do you know—do you know when, specifically, you asked to speak with him?
>
> *A.* I don't have all of the dates. Off the top of my head, I know that we had a family team meeting on, I believe it was, April 7th of 2022 prior to the court hearing that day, in which we attempted to get him on the line to participate while he was in jail, and he appeared and declined to participate.

Later, on re-cross-examination, defense counsel continued this inquiry:

> *Q.* Did you indicate that [defendant] was in jail when you attempted to call him?
>
> *A.* Correct.

Defendant contends that defense counsel's cross-examination of the CPS investigator was improper because defense counsel elicited comments about defendant's post-arrest exercise of the right to remain silent, as well as his incarceration. The cross-examination of witnesses is a matter of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Defendant overlooks that it may have been defense counsel's trial strategy to elicit such testimony in order to

determine whether defendant's right to remain silent had been violated. Importantly, the right to remain silent "applies in any situation in which a criminal prosecution might follow, regardless of how likely or unlikely that outcome may seem." *In re Blakeman*, 326 Mich App 318, 332; 926 NW2d 326 (2018). "Accordingly, '[t]he privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory.' " *Id.* (citation omitted). Alternatively, as the prosecutor points out on appeal, defense counsel may have elicited this testimony to show that the CPS investigator was biased toward the victim and made little effort to pursue defendant's side of the story. Regardless of the rationale, we will not "second-guess counsel on matters of trial strategy," or "assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). Moreover, a failed strategy alone does not rise to the level of constitutionally deficient performance. *Petri*, 279 Mich App at 412.

Even if we agreed that trial counsel's questioning was objectively unreasonable, defendant cannot show that he was prejudiced by defense counsel's performance, given that the prosecutor presented ample additional evidence in support of his guilt. See *Trakhtenberg*, 493 Mich at 56. Defendant is not entitled to relief.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney